LARRY DURFEE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Old Ben Coal Company, Appellees).

Fifth District (Industrial Commission Division)   No. 5—89—0046WC

Opinion filed March 7, 1990.

William D. Hanagan, of Hanagan & Dousman, of Mt. Vernon, for appellant.

A. Courtney Cox, of Hart & Hart, of Benton, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

An arbitrator found that the petitioner, Larry Durfee, was 10% permanently disabled as a result of injuries arising out of and in the course of his employment (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)). The Industrial Commission affirmed the arbitrator's decision, and the circuit court confirmed the Commission's decision. The

petitioner appeals.

The record shows that on June 6, 1985, the petitioner filed an application for adjustment of claim and a request for hearing, alleging that under section 8(d)(1) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(1)) he was entitled to compensation from the respondent, Old Ben Coal Company. At the hearing before the arbitrator, the petitioner testified that he had been employed by the respondent as a repairman. His job duties included repairing equipment and lifting heavy pieces of machinery. On June 16, 1984, he and another man attempted to move a piece of sheet metal onto a belt line. The petitioner knelt under the piece, extended his left leg, and pushed. He then felt a sharp pain in his stomach and left leg. He stopped lifting and spent the rest of the shift riding in a cart and checking transformers. His pain increased throughout the evening, so upon leaving work he went to the hospital. The doctor who saw him prescribed rest and therapy. On a later date, he referred the petitioner to Dr. Richard Morgan.

According to Dr. Morgan's notes, he first examined the petitioner on August 1, 1984. He noted that the petitioner walked with a limp and could not lift or squat without pain. The petitioner also had tenderness along the insertion of the pectineus and adductor magnus. X rays revealed no bone abnormalities. Dr. Morgan diagnosed the injury as an adductor avulsion from the superior pubic ramus. He prescribed physical therapy and nonsteroidal medicine.

The petitioner continued seeing Dr. Morgan for about one year after the accident. According to the doctor's notes from this period, the petitioner's pain did not abate. Dr. Morgan continued with his diagnosis of an adductor strain of the left groin. In making his diagnosis, he noted that there were no physical parameters by which he could measure the petitioner's progress; he could only rely on the petitioner's subjective symptoms.

In notes dated July 19, 1985, Dr. Morgan stated that the petitioner had recently completed a one-month rehabilitation program. The petitioner told him that the program had improved his overall tone, but that because of his pain, he had had difficulty performing the simulated duties of a repairman. Dr. Morgan could not explain why the petitioner had not improved with rest and therapy. He was pessimistic about the petitioner's ability to return to work, but stated that a work trial might be in order. He placed no physical restrictions on the petitioner. If the petitioner failed his work trial, Dr. Morgan stated there was little else he could do.

Dr. John Gragnani stated in a report dated October 8, 1984, that

he had examined the petitioner and found that the petitioner had tenderness in the left inguinal area. The pain did not radiate down the leg, but was limited to the lower abdomen and groin. Forced flexion against resistance as well as straight-leg raising caused him discomfort. In a letter dated November 26, 1984, Dr. Gragnani stated that the petitioner continued having pain in his left thigh, although the deep pain had subsided. The petitioner also had difficulty rotating his leg. Dr. Gragnani prescribed further therapy for the injury.

In a letter dated July 19, 1985, Virgil May, the director of a vocational rehabilitation service, stated that the petitioner had participated in a rehabilitation program from June 11 to July 3, 1985. The program consisted of exercises simulating the petitioner's job activities. May stated that the petitioner had made significant gains in strength and endurance, but that his pain had increased as well. Because of his pain, he was only able to tolerate two hours of exercise a day during the last days of the program. Repetitive motion and leg activity increased his pain. A therapist told May that he believed the pain would continue for at least six to nine months. May was uncertain whether the petitioner's pain would completely abate in that time. He concluded that the activity level the petitioner was able to maintain was far below that required by his job and that more difficult activities would only irritate his condition. Noting that the petitioner was enrolled in the seminary and planned on being ordained as a minister, May recommended that the petitioner pursue his clerical goals and be released from his former position.

John Grenfell, who holds a doctorate in vocational guidance and educational psychology, testified that the petitioner's injury would prevent him from returning to work of heavy or moderate physical difficulty. He noted that the petitioner could anticipate an earning reduction of one-half to two-thirds of his former salary if he performed clerical work.

The petitioner testified that 15 years earlier he had been employed as a computer operator. He was presently employed as a school administrator for the Praise World Outreach Church at a salary of $250 per week. He said that he enjoyed his new job and that it was the best one he could find. He was also an ordained minister and an elder in his church. He continued having constant pain in his groin and upper leg, which was aggravated by twisting or lifting as well as by long standing, walking, or sitting.

The arbitrator found that the petitioner had sustained accidental injuries arising out of and in the course of his employment. He further found that the petitioner was entitled to receive temporary total

disability benefits of $327.60 per week for a period of 58⁴/₇th weeks. Regarding the request for compensation under section 8(d)(1), the arbitrator noted that the petitioner had sought employment as a school administrator and there was no evidence that he had attempted to return to his job or find other employment. He concluded that the petitioner should be compensated for 10% permanent disability under section 8(d)(2) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)) instead of for loss of earnings under section 8(d)(1) (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(1)). Accordingly, he awarded the petitioner the additional sum of $293.61 per week for 50 weeks. In affirming the decision, the Commission adopted the arbitrator's findings.

The petitioner argues on appeal that the Commission erred in making a section 8(d)(2) award. He contends that the Commission should have made a section 8(d)(1) award, because he proved that he was partially incapacitated from pursuing his usual and customary line of employment and, as a result, had suffered a loss in earning capacity.

■■ Section 8(d)(1) of the Workers' Compensation Act states that if an accidental injury renders a worker partially incapacitated from pursuing his usual and customary line of employment, he shall receive compensation pursuant to that section. (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(1).) However, if a worker who has been partially incapacitated from pursuing his usual and customary line of employment has not suffered a loss in earning capacity, he shall be compensated pursuant to section 8(d)(2) instead of section 8(d)(1). (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2).) In establishing his right to compensation, the petitioner has the burden of proving all of the elements of his case by a preponderance of the evidence. (*A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804.) On review, the Commission's compensation finding should be reversed only if it was against the manifest weight of the evidence. *Marek v. Industrial Comm'n* (1973), 55 Ill. 2d 323, 302 N.E.2d 300.

■■ The record shows that Dr. Morgan suggested that the petitioner attempt a work trial and placed no physical restrictions on him. The petitioner did not attempt to return to work, however, but elected to remain in a job which he enjoyed and which coincided with his clerical interests. Although he stated that this was the best job he could find, there is no evidence that he attempted to obtain a position as a computer operator or any other form of employment. Based on the foregoing, the Commission could have reasonably concluded that the petitioner, while having suffered an injury, had not shown a loss in earning capacity. We therefore find that the section 8(d)(2) award was

not against the manifest weight of the evidence.

The petitioner also argues that the arbitrator, the Commission, and the circuit court erred in requiring that he attempt to return to work in order to qualify for a section 8(d)(1) award. A review of the decisions below reveals that only the arbitrator and the circuit court specifically mentioned his failure to return to work. We find that they did so to support their decisions and not to impose a legal requirement. Accordingly, there was no error.

The judgment of the circuit court of Franklin County is affirmed.

Affirmed.

McNAMARA, WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.