WILLIAM RUTLEDGE, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Sargent-Welch Scientific Company, Appellant).

First District (Industrial Commission Division)   No. 1—92—0062WC

Opinion filed January 15, 1993.

McCULLOUGH, P.J., specially concurring.

Wiedner & McAuliffe, Ltd., of Chicago (Frank J. Wiedner and Mark P. Matranga, of counsel), for appellant.

Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago (Stanford L. Lambert, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The appellee, William Rutledge (claimant), was employed as a surface grinder for Sargent-Welch Scientific Company (Sargent-Welch or employer) when he developed a work-related disability.

The claimant accepted a lesser paying job in the employer's stockroom, but later quit, moved to Michigan and worked part time. Subsequently, on arbitration, the claimant was awarded two-thirds of the difference between his average weekly wage as a surface grinder and his Michigan job pursuant to section 8(d)1 of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(d)(1)). The Industrial Commission (Commission) reversed the decision of the arbitrator based on its finding that the claimant had self-limited his employment and earning capacity without medical necessity or justification. On administrative review, the circuit court reversed the decision of the Commission based on its determination that the claimant's disability continued. The circuit court concluded that the claimant was entitled to two-thirds of the difference between his surface grinder pay and what he earned at the Sargent-Welch stockroom job, based on a 20-hour work week. The issue on appeal is whether the claimant's previously established right to a wage differential benefit is terminated by a job change which resulted in a further reduction in wages.

The claimant worked for Sargent-Welch for 15 years as a surface grinder where he was required to have contact with various chemicals and lubricants. On March 20, 1985, the claimant noticed large blisters and sores on his hands that would not heal. His condition became worse, and the nurse referred him to Dr. Hinkamp, who subsequently referred the claimant to Dr. John Weiss. Dr. Weiss examined the claimant on April 29, 1985, and found that his hands and feet were covered with red bumps and that his toenails were black and falling off. Dr. Weiss treated the claimant with steroid medication and an ointment. Around this time, the claimant was moved from his former position as a surface grinder to a position in the stockroom.

In July of 1985, the claimant sought treatment from Dr. Barry Kirschenbaum. The claimant continued working until December 18, 1985, when he was taken off work for several months. He returned to work on February 24, 1986. In September of 1986, the claimant was treated by Dr. Sophie Worbec, who performed patch tests and prescribed numerous antibiotics and creams. Dr. Worbec also removed a bump from the claimant's right eye which would not heal. The claimant continued treatment with Dr. Worbec until April of 1987, and continued in the stockroom until December 11, 1987.

In December of 1987, the claimant moved to Lawton, Michigan were he found a job with Montgomery Wards working 20 hours a week doing light maintenance work.

In his former position as a surface grinder, the claimant earned $11.30 an hour. When the claimant moved to a position in the stockroom he initially earned $7 an hour, but he received two wage increases which brought his hourly rate up to $7.63. As a maintenance worker for Montgomery Wards, the claimant earns $5 an hour.

▪▪ The employer contends that it was error for the circuit court to reverse the decision of the Commission and to adopt and modify the dissenting opinion of Commissioner Jacqueline A. Kinnaman because the Commission's decision that the claimant had failed to prove an entitlement to a wage loss differential where he self-limited his employment opportunities was supported by the evidence. Section 8(d)1 of the Act provides in relevant part:

> "If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall *** receive compensation for the duration of his disability *** equal to 66⅔% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(d)(1).)

Pursuant to this provision, a claimant is entitled to wage loss benefits for the duration of his disability. The purpose of section 8(d)(1) is to compensate the injured employee for his reduced earning capacity. *Fritz Electric Co. v. Industrial Comm'n* (1988), 165 Ill. App. 3d 550, 559, 518 N.E.2d 1289.

In the case *sub judice* the claimant was no longer able to work in his former occupation as a surface grinder when he developed contact dermatitis as a result of his exposure to certain chemicals. While the arbitrator and Commissioner Kinnaman concluded that the claimant was entitled to a wage loss differential benefit based on a reduction of his salary to $5 per hour, the claimant concedes that the benefit amount should be based on two-thirds of the difference between his hourly wage as a surface grinder which was $11.30 and the hourly wage of $7.63. Although the Commission, in its findings, acknowledged that the claimant could no longer perform his original job as a surface grinder due to the contact dermatitis and that he was entitled to a wage loss benefit when he was moved to a position in the employer's stockroom, the Commission

concluded that the claimant failed to prove an ongoing wage loss subsequent to leaving the employer.

Relying on *Durfee v. Industrial Comm'n* (1990), 195 Ill. App. 3d 886, 553 N.E.2d 8, the employer argues that had the claimant remained at Sargent-Welch he would not have to prove that he could only earn $7.63 an hour but that because he voluntarily left the employer and accepted a position in Michigan, he now has to prove that he is unable to find employment at the wages he received as a surface grinder.

In *Durfee*, the petitioner was unable to perform his job as a repairman of heavy equipment and machinery following an injury to his leg and pelvic area. After completing a rehabilitation program, the petitioner accepted a position with a church school at a reduced wage rate. On appeal, the court affirmed the denial of wage differential benefits based on the fact that the petitioner's physician had suggested that he perform his former job on a trial basis and placed no restriction on his activity. The court also noted that, although the petitioner had been employed as a computer operator 15 years earlier, he made no effort to obtain employment in this field. Based on these factors, the *Durfee* court held that there was sufficient evidence to support the Commission's determination that the petitioner had not shown a loss in earning capacity. *Durfee*, 195 Ill. App. 3d at 890.

However, *Durfee* is distinguishable in several respects. Unlike the petitioner in *Durfee*, the claimant in this case was unable to return to his former occupation and was placed in a different position at a lower wage by the employer. In addition, there was no evidence that the claimant had an occupation prior to his position as a surface grinder that would have given him the opportunity to find employment without a reduction in wages.

■ In sum, there is no evidence that the status of claimant's disability has changed. Because he is entitled to benefits under section 8(d)(1) for the duration of his disability, we conclude that the claimant should have continued to receive benefits based on two-thirds of the difference between $11.30 and $7.63 for a 20-hour work week subsequent to his leaving the employer.

Accordingly, the order of the circuit court reversing the decision of the Commission is affirmed.

Affirmed.

WOODWARD, STOUDER, and LEWIS,* JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:
I agree with the majority that the employee should be granted a wage differential as provided for by the circuit court's order, but for the following reasons.

The Commission allowed a wage differential from February 25, 1986, to July 1, 1986, in an amount of $89.45, a wage differential from July 1, 1986, to April 1, 1987, in the amount of $216.46, and a wage differential from April 1, 1987, to December 11, 1987, in the amount of $187.17. This decision by the Commission and confirmed by the circuit court is not appealed by either party to the case. The Commission in justifying the above wage differential to the employee found "injuries sustained permanently incapacitate him from pursuing the duties of his usual and customary line of employment." The only reason the Commission terminated the wage differential was the fact that the employee voluntarily terminated his employment with the employer.

The Commission's finding that the employee was entitled to a wage differential up until the date December 11, 1987, when he terminated his employment with the employer is inconsistent with its finding that the injuries did not permanently incapacitate him from pursing his usual and customary line of employment after that date.

*Durfee*, as cited by the respondent, is inapposite. In that case, the Commission found that the employee was entitled to a section 8(d)(2) award (see Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)) and was not entitled to a section 8(d)(1) award (see Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(1)). In *Durfee* we found that there was sufficient evidence to support the Commission's determination that the petitioner had not shown a loss in earning capacity. Here, by the Commission's decision itself, it found that there was wage differential for a certain period of time and simply set a cutoff period with no justification. The claimant did not cross-appeal the decision of the circuit court setting the wage differential after December 11, 1987, at the two-thirds of the difference between $11.30 and $7.63 for a 20-hour work week.

The respondent did not appeal the decision of the Commission insofar as it granted a wage differential up until the time the em-

---

*Justice Lewis fully participated in this opinion prior to his retirement.

334

ployee ceased employment with it. The only issue presented by the employer is whether the decision of the Commission which denied the claimant a wage differential after December 11, 1987, was against the manifest weight of the evidence. When one looks at the findings of the Commission and also its provision allowing a wage differential for a certain period of time up until the employee terminated his employment with the employer, the decision of the Commission terminating the wage differential after that date is contrary to law.