GERALD J. PIETRZAK, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Landair Transport, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—01—2006WC

Opinion filed April 18, 2002.

Thomas R. Lichten, of Chicago, for appellant.

Braun Strobel Lorenz Bergin & Millman, P.C., of Chicago (Peter J. Lorenz, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH, delivered the opinion of the court:

Claimant, Gerald J. Pietrzak, appeals from an order of the circuit court of Cook County confirming a "corrected" decision of the Illinois Industrial Commission (Commission) following an earlier remand by the circuit court. The respondent employer is Landair Transport, Inc.

The issues on appeal are whether (1) the Commission improperly considered the reports of Drs. Joel Grossman and Jeffrey Coe; (2) the Commission's reduction of temporary total disability (TTD) benefits by $1^6/_7$ weeks by excluding the period from November 2, 1994, through November 14, 1994, was against the manifest weight of the evidence; (3) the Commission's award of permanent partial disability (PPD) under section 8(d)(1) of the Workers' Compensation Act (Act) (820 ILCS 305/8(d)(1) (West 1994)) instead of section 8(d)(2) of the Act (820 ILCS 305/8(d)(2) (West 1994)) was against the manifest weight of the evidence or contrary to law; and (4) the denial of additional compensation and attorney fees was against the manifest weight of the evidence or contrary to law. We affirm.

The arbitrator awarded claimant $722.24 for $60^5/_7$ weeks for temporary total disability (TTD); a wage differential for the "duration of disability"; and $18,579.36 for medical expenses. 820 ILCS 305/8(a), (b), (d)(1) (West 1994). The arbitrator denied claimant's request for additional compensation and attorney fees. 820 ILCS 305/16, 19(k), (l) (West 1994). On October 27, 1997, the Commission issued a decision modifying the arbitrator's award as follows: (1) awarded $666.67 per week for $58^6/_7$ weeks for TTD; and (2) vacated the permanency award made pursuant to section 8(d)(1) of the Workers' Compensation Act (820 ILCS 305/8(d)(1) (West 1994)), and (3) found claimant permanently partially disabled to the extent of 20% loss of the man as a whole pursuant to section 8(d)(2) of the Act (820 ILCS 305/8(d)(2) (West 1994)) in the amount of $396.89 per week for 100 weeks. In all other respects, the Commission affirmed and adopted the arbitrator's decision.

On judicial review, the circuit court entered an order on September 24, 1998, setting aside the Commission decision and remanding it with instructions that the Commission make findings and give reasons, including inferences drawn from the evidence, to support its decision as to four issues specified in the circuit court's order. On remand, the

Commission issued a "corrected" decision affirming and adopting its earlier decision as modified. After readjusting claimant's average weekly wage, the Commission awarded claimant $722.24 per week for 58⁶/₇ weeks TTD, $396.89 per week for 100 weeks for permanent partial disability (PPD) pursuant to section 8(d)(2) of the Act, reaffirmed its earlier award of medical expenses, and continued to deny claimant additional compensation and attorney fees.

We initially consider whether the Commission improperly considered the reports of Drs. Joel Grossman and Jeffrey Coe. The Commission's findings with regard to the facts objected to by claimant were as follows:

"10. Petitioner was also examined by Respondent [sic] independent medical examiner Dr. Coe on April 14, 1995. He also noted Petitioner's condition to be consistent with L5-S1 radiculopathy, but opined that the condition had plateaued. He was found capable of light duty with an appropriate restriction of no lifting over 35 lb. on an occasionally [sic] basis with ability to change positions during the day. Light duty would include supervisory and management duties. Upon further examination of the medical records, he opined that the various histories Petitioner gave regarding his back injury suggested an intervening accident. He found Petitioner to be at maximum medical improvement as of December 16, 1994, the date he was released from physical therapy (RX9). Dr. Grossman, who also reviewed Petitioner's medical records in July 1995, opined that the three different versions given by Petitioner as to how his injury occurred raised significant doubt as to the issue of causal connection (RX16)."

Respondent's exhibit 16 was a report authored by Drs. Kenneth Fischer and Joel Grossman, who reviewed medical records at the request of respondent. The report did include a response by those doctors to a question from respondent about the relationship of the treatment to the alleged injury of October 1994. Before the arbitrator, claimant's attorney objected to respondent's exhibit 16. The arbitrator admitted these exhibits into evidence.

■ On appeal, in a one-paragraph argument without citation to legal authority, claimant argues that the Commission should not have considered Grossman's opinion as he did not examine claimant and the report was only relevant to the reasonableness of medical bills. As shown in its findings, paragraph 10, the Commission merely observed the fact that the report was made. In none of its concluding paragraphs did the Commission refer to this report as a basis for its decision.

In the circuit court, Judge White concluded that, while respondent's exhibit 15 was offered with respect to the reasonableness and necessity of the medical treatments and bills, there was no such limited

offer with regard to Grossman's report. There was no ruling by the arbitrator to the effect that respondent's exhibit 16 (the Fischer/Grossman report) was limited to the reasonableness of the treatment and medical expenses. Judge White correctly stated that the admissibility of the reports of Grossman and Coe was not raised or argued by claimant before the Commission in the review proceeding. Moreover, the issue was not raised by claimant in the initial judicial review proceeding. As a result, the circuit court found both of the arguments waived. We agree. See *Service Adhesive Co. v. Industrial Comm'n*, 226 Ill. App. 3d 356, 370, 589 N.E.2d 766, 774 (1992) (failure to raise an issue before the Commission waives the issue).

Moreover, *Service Adhesive* provides an additional basis for finding waiver of the issue in this case, the failure to cite legal authority in support of the argument. *Service Adhesive*, 226 Ill. App. 3d at 365, 589 N.E.2d at 771. The one-sentence statement in claimant's brief, "Similarly, Dr. Coe's reports were objected to on hearsay and those should not have been admitted," will not be deemed argument that complies with Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)).

Although respondent apparently offered the Grossman report as relevant to the question of the reasonableness of the charges and treatment, it was not admitted for that limited purpose by the arbitrator and, although claimant objected to the exhibit, claimant did not ask that the consideration of the exhibit be limited to the reasonableness of the medical treatment. The Commission simply referred to the existence of the report from Grossman and did not rely on it as the basis for its decision. There was no error by the Commission in its consideration of Grossman and Coe reports.

We next consider whether the Commission's reduction of TTD benefits by 1⁶/₇ weeks by excluding the period from November 2, 1994, through November 14, 1994, was against the manifest weight of the evidence. The Commission found that the first day claimant was not able to work was November 15, 1994, as established by a letter from Dr. Alan Hirsch, a neurologist. Claimant argues that his entitlement to TTD should be calculated beginning November 2, 1994. Claimant concedes that Hirsch authored a letter keeping claimant off work from November 15, 1994, to September 29, 1995. Claimant argues he is entitled to the additional 1⁶/₇ weeks TTD from November 2 through November 14, 1994.

■ To establish entitlement to TTD benefits, claimant must prove not only that he did not work, but that he was unable to work and the duration of that inability to work. *Cropmate Co. v. Industrial Comm'n*, 313 Ill. App. 3d 290, 296, 728 N.E.2d 841, 845 (2000). The Commission's determination of whether claimant was unable to work and the

duration of the temporary total disability will not be set aside on review unless contrary to the manifest weight of the evidence. *Cropmate Co.*, 313 Ill. App. 3d at 296, 728 N.E.2d at 845-46.

■ The Commission accepted Hirsch's determination of November 15, 1994, as the beginning of the time when claimant was unable to work even though claimant testified that he did not work from and after November 2, 1994. In light of the fact that Dr. Beverly Henderson's testimony and records indicated that claimant had those symptoms for some time prior to November 2, 1994, and Henderson did not take claimant off work on that date, the Commission could reasonably find that claimant was not temporarily totally disabled on November 2, 1994, as claimant contends. That finding was not against the manifest weight of the evidence.

We next address the permanency award. The Commission determined that claimant failed to prove entitlement to a wage differential under section 8(d)(1) of the Act because he did not conduct a sufficient job search and accepted a position at a salary lower than was offered him in 1995 and lower than he would have expected to command in light of his experience in the transportation industry. Instead, the Commission awarded claimant PPD on the basis of loss of 20% of the man as a whole under section 8(d)(2) of the Act. The corrected decision on remand also affirmed and adopted the earlier Commission decision as to permanency. In its original decision, the Commission found that claimant had failed to prove that he was partially incapacitated from pursuing his usual and customary line of employment.

■ The extent or permanency of disability is a question of fact for the Commission. *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 361, 379 N.E.2d 206, 209 (1978); *Steve Foley Cadillac/Hanley Dawson v. Industrial Comm'n*, 283 Ill. App. 3d 607, 611-12, 670 N.E.2d 885, 888 (1996). The Commission's finding as to compensation will be reversed only if it is against the manifest weight of the evidence. *Durfee v. Industrial Comm'n*, 195 Ill. App. 3d 886, 890, 553 N.E.2d 8, 10 (1990). The test is whether there is sufficient factual evidence in the record to support the Commission's determination, not whether this court, or any other tribunal, might reach an opposite conclusion. *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450, 657 N.E.2d 1196, 1199 (1995). The determination of witness credibility and the weight to be accorded the evidence are matters within the province of the Commission. *Dillon v. Industrial Comm'n*, 195 Ill. App. 3d 599, 607, 552 N.E.2d 1082, 1087 (1990).

In *Durfee*, the employee's treating physician placed no restrictions on the employee and recommended that he attempt a trial return to work. Instead, the employee elected to remain in a job he enjoyed and

that coincided with his interests. There was no evidence that he attempted to obtain any other form of employment. *Durfee*, 195 Ill. App. 3d at 890, 553 N.E.2d at 10-11.

Here, the Commission found that claimant's average weekly wage with respondent was $1,144.23 ($59,500 per year). He was paid $1,000 per week and had the use of a company car valued at $7,500. Claimant's duties were to travel to different locations for respondent to get new facilities running and to straighten out terminal problems. Claimant testified that there was some manual labor involved in the performance of his duties.

Hirsch released claimant to return to work on September 29, 1995. Between July or August 1995 and January 1996, claimant did not complete any job applications. Claimant secured employment on January 2, 1996, as a terminal manager with a salary of $650 per week ($33,800 per year) and no company car. In his new position, he was required to have an automobile and had to purchase one. This was the second company he had contacted, and he accepted the position on the same day that he completed the application. The position included duties such as marketing, sales calling, assisting dispatchers, driver liaison, training and management. His new position required no driving or heavy lifting.

Claimant testified that, in January 1995, he spoke with Mr. Bruce Campbell, respondent's executive vice president, about trying to secure a position within respondent's successor company. He also had several discussions with Harold Antonson, president of LRS Transportation, respondent's successor, between January and May of 1995 in which several possible positions were discussed. At one point, Antonson mentioned a position as terminal manager, but claimant stated he was not interested. That position would normally pay a salary of $52,000 per year in Chicago. At no time during these discussions were there any job offers. In May of 1995, claimant was contacted by two trucking companies, Big Red and Dean Foods, which inquired about his status. According to claimant, the position would have been in the $50,000-per-year range. However, claimant advised the company that he had not yet been released to return to work. Claimant also testified that he looked in the paper under the transportation section but could not find anything, as jobs at his level basically came through word of mouth. Prior to his work release, he also went to six employers close to his home, leaving applications.

Claimant testified that he had previous experience in all areas of the transportation business, including dock supervision, dispatching and sales. A labor market survey prepared by vocational rehabilitation counselor Michelle Running on May 10, 1995, noted that claimant had

25 to 30 years of experience in the transportation industry in various capacities such as driving, sales, business owner, and terminal manager. Running noted that only a small percentage of employers actually advertise a job opening, but instead hire people through informal methods such as networking. She stated that, since claimant had been in the transportation industry for many years, he had likely developed a network of job contacts that would greatly increase the likelihood of his finding employment. In her opinion, claimant was employable and could obtain a sedentary, light-level position within the industry with a salary ranging from $35,000 to $50,000 per year.

   ■ This court considered wage differential awards in *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721, 734 N.E.2d 482 (2000). In *Gallianetti*, this court concluded that section 8(d) precluded an award based on percentage of the person as a whole "where the claimant has presented sufficient evidence to show a loss of earning capacity." *Gallianetti*, 315 Ill. App. 3d at 728, 734 N.E.2d at 488. To qualify for a section 8(d)(1) wage differential award, claimant must prove (1) partial incapacity that prevents him from pursuing his usual and customary line of employment and (2) impairment of earnings. *Gallianetti*, 315 Ill. App. 3d at 730, 734 N.E.2d at 489. Here, although claimant testified to the symptoms he still had, there was no evidence that, even with his restrictions, he was incapable of performing management duties with a transportation company.

   ■ In addition, the Commission found that claimant did not prove an impairment of earnings. Although there is no affirmative duty that claimant conduct a job search, that is one way of demonstrating impairment of earnings. *Gallianetti*, 315 Ill. App. 3d at 731, 734 N.E.2d at 490. In *Gallianetti*, this court noted that the claimant was severely restricted in the type of job he could perform; claimant regularly inquired about positions within his restrictions at a number of local employers; claimant unsuccessfully attempted to find employment within his restrictions through the union on four occasions; there was no evidence that a job search covering a wider geographical area would have achieved greater success; and a job survey indicated that no openings were available in the four types of positions within claimant's restrictions that paid more than the job he obtained. *Gallianetti*, 315 Ill. App. 3d at 731-32, 734 N.E.2d at 490.

   In the case at bar, the Commission relied on the job survey performed by Running. She found 43 available positions within a two-week period. In her opinion, claimant could obtain a sedentary, light-level position within the transportation industry at a salary ranging from $35,000 to $50,000 per year. The Commission could reasonably rely on that evidence to find that claimant did not prove his earnings

were impaired as a result of his disability. This finding is not against the manifest weight of the evidence.

■ The final issue is whether the denial of additional compensation and attorney fees was against the manifest weight of the evidence or contrary to law. Claimant alleged a work-related injury on October 4, 1994. However, claimant did not notify respondent that the injury was work related until January 19, 1995, after respondent was purchased by LRS Transportation and claimant was informed on January 11, 1995, that he would not be retained and received his final paycheck. In October 1994, claimant paid for medical treatment from Drs. Joseph Bishop and Chester Wilk and did not submit the bills to respondent. He initially had Henderson submit her bills to his group insurance carrier. The group insurance carrier was advised that claimant's injury was not work related. Claimant's group carrier was billed until February 1995, and no steps were taken to advise that company that the treatment was work related. In addition, some of claimant's medical bills were forwarded to his wife's group carrier. The Commission observed that, in addition to giving a history to medical providers of injuring his back in a bathtub incident and while carrying luggage, he informed Wilk when he saw him on October 31, 1994, that he aggravated the back pain while getting out of a car.

The Commission rejected claimant's argument that he was entitled to additional compensation under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act because of respondent's failure to pay TTD benefits. The Commission concluded that there were inconsistencies in the medical histories and versions relating to the onset and exacerbation of claimant's back injury as well as delayed identification by claimant that the injury was work related. The Commission found that the respondent's decision to dispute the claim was not unreasonable or vexatious.

Whether the employer's conduct justifies the imposition of additional compensation is considered in terms of reasonableness and it is a factual question for the Commission; the Commission's decision will not be overturned unless it is against the manifest weight of the evidence. *McKay Plating Co. v. Industrial Comm'n*, 91 Ill. 2d 198, 209, 437 N.E.2d 617, 623 (1982).

The Commission's determination that claimant was not entitled to additional compensation and attorney fees under the facts of this case is not against the manifest weight of the evidence.

The order of the circuit court of Cook County confirming the Commission's corrected decision following remand is affirmed.

Affirmed.

HOFFMAN, O'MALLEY, HOLDRIDGE, and RARICK, JJ., concur.