UNITED AIRLINES, INC., Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Mary Ritter, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—07—1316WC

Opinion filed April 29, 2008.

Wiedner & McAuliffe, Ltd., of Chicago (Erica Rogina and Paul Wiedner, of counsel), for appellant.

Katz, Friedman, Eagle, Eisenstein, Johnson & Bareck, P.C., of Chicago (Martha A. Garcia and Nancy J. Shepard, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

United Airlines, Inc. (United), appeals from an order of the circuit court of Cook County, confirming a decision of the Illinois Workers' Compensation Commission (Commission) which included *per diem* expense payments when computing the average weekly wage of the

claimant, Mary Ritter, for purposes of calculating the benefits to which she is entitled pursuant to the provisions of the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). For the reasons that follow, we reverse the judgment of the circuit court in part and remand this matter to the Commission for proceedings consistent with the opinions expressed herein.

The claimant filed applications for adjustment of claim pursuant to the Act, seeking benefits for injuries she claimed to have received while in the employ of United on August 27, 1998 (case No. 99 WC 22171), and September 9, 2000 (case No. 01 WC 36917). The following factual recitation is taken from the evidence presented at an arbitration hearing held to resolve both claims.

The claimant was employed by United as a flight attendant. She testified that while working on August 27, 1998, a food-service carrier fell onto her from an overhead bin in an aircraft, throwing her backwards into a counter and causing her to strike her back. After completing the flight, the claimant sought medical treatment. She was instructed to remain off work and underwent a series of physical therapy sessions.

In August of 1999, the claimant returned to work at United. She testified that, on September 9, 2000, she tripped on a passenger's legs and fell. The claimant was diagnosed with chronic myofascial pain syndrome and a herniated disc at C6-C7. She was again removed from work and resumed physical therapy. The claimant never returned to work as a flight attendant and retired from United on August 2, 2002.

Since the early 1990s, the claimant volunteered for Sun Coast Chaplain Services, which provides religious and social services to inmates at the Sarasota County jail. On April 17, 2002, she began working part time for Sun Coast Chaplain Services. At the time of the arbitration hearing, the claimant worked 20 hours per week as an assistant chaplain.

The claimant introduced into evidence the collective bargaining agreement governing the wages for United's flight attendants. In addition to an hourly rate of pay and premiums for certain positions, flight attendants were paid a *per diem* expense allowance of $1.80 to $1.85 per hour. For international flights, the *per diem* payments were increased by $.25 per hour, and a special allowance was paid for the hours the flight attendants were required to lay over in certain cities with relatively high costs of living.

The *per diem* payments were included in the claimant's regular paychecks. When the claimant was not required to stay overnight while working as a flight attendant, her *per diem* payments were subject to federal and state income taxes. However, no taxes were

withheld for the *per diem* payments made during trips that lasted more than one day.

The claimant testified that she believed that the *per diem* payments were part of her compensation and that she used them to pay her household bills. She further testified that she was not required to account for her expenses and did not pay taxes on the majority of the *per diem* payments.

In 1997 and 1998, the claimant flew primarily to Honolulu, Hawaii. She testified that in Honolulu she would either bring food from home, go to a local grocery store, or eat at inexpensive restaurants. Although the claimant was unable to recall the amount she spent on any particular trip prior to the 1998 injury, she did testify that she did not spend the entire amount of the *per diem* on these trips.

Prior to her 2000 injury, the claimant was flying primarily to Japan. She testified that her *per diem* payments were approximately $230 for each trip. The claimant, however, testified that she would only spend around $50 when she went to Japan, which included $18 for a Japanese hot bath to relieve her back pain. The claimant stated that she would eat on the plane and buy food from a local grocery store. She estimated that she spent $10 to $15 at the grocery store each trip. The claimant also stated that she was able to eat at a cafeteria available only to the flight crews, which provided food at much lower rates.

Following the arbitration hearing, the arbitrator found that the claimant suffered accidental injuries on August 27, 1998, and September 9, 2000, arising out of and in the course of her employment with United. In determining the claimant's average weekly wage, the arbitrator included the taxable *per diem* payments made by United to the claimant, but excluded the nontaxable *per diem* payments, finding that the nontaxable payments constituted actual reimbursement for travel expenses and, therefore, not real economic gain. The arbitrator awarded the claimant temporary total disability (TTD) benefits for a period of 44⁴/₇ weeks in case No. 99 WC 22171 and 79⁴/₇ weeks in case No. 01 WC 36917, permanent partial disability (PPD) benefits for a period of 250 weeks by reason of the 50% loss of the person as a whole, and $3,023.64 for medical expenses incurred by the claimant.

Both the claimant and United filed petitions for review of the arbitrator's decisions before the Commission. The Commission, with one commissioner dissenting, modified the decisions of the arbitrator and found that all of the *per diem* payments constituted economic gain and, therefore, should have been included in computing the claimant's average weekly wage. Additionally, the Commission vacated the arbitrator's award of PPD benefits and found that the claimant was

entitled to a wage differential of $327.04 per week, commencing on April 1, 2002. The Commission also awarded the claimant TTD benefits for a period of 44⁴/₇ weeks in case No. 99 WC 22171 and 66⁵/₇ weeks in case No. 01 WC 36917, maintenance benefits for a period of 12⁶/₇ weeks, and $3,124.84 for medical expenses.

United sought judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and this appeal followed.

United argues that the Commission's decision to include the *per diem* payments when computing the claimant's average weekly wage is against the manifest weight of the evidence. It contends that the payments reflect reimbursement for the claimant's expenses while traveling away from home, not real economic gain. United also contends that the claimant failed to prove the amount she actually spent on travel expenses as compared with the *per diem* payments she received.

In a workers' compensation case, the claimant has the burden of establishing her average weekly wage. *Cook v. Industrial Comm'n*, 231 Ill. App. 3d 729, 731, 596 N.E.2d 746 (1992). The determination of an employee's average weekly wage is a question of fact for the Commission, which will not be disturbed on review unless its against the manifest weight of the evidence. *Ogle v. Industrial Comm'n*, 284 Ill. App. 3d 1093, 1096, 673 N.E.2d 706 (1996). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

■ Generally, amounts paid as reimbursement for travel expenses are not part of a claimant's earnings for the purpose of calculating her average weekly wage. The rationale behind this rule is that such payments merely reimburse the claimant for employment-related expenses that she would not otherwise incur, and, therefore, the claimant will not suffer any economic loss if she fails to receive such reimbursements once the employment ceases. *Swearingen v. Industrial Comm'n*, 298 Ill. App. 3d 666, 670-71, 699 N.E.2d 237 (1998), citing *Layne Atlantic Co. v. Scott*, 415 So. 2d 837 (Fla. App. 1982). However, payments designated as travel expenses should be included in a claimant's average weekly wage to the extent that such payments represent real economic gain rather than reimbursement for actual expenses incurred. *Swearingen*, 298 Ill. App. 3d at 671.

■ In this case, the Commission included all of the claimant's *per diem* payments in calculating her average weekly wage. If the *per diem* payments the claimant received were greater than the expenses she actually incurred during her trips, the difference constituted real

economic gain to the claimant and should be included when computing her average weekly wage. Accordingly, the claimant's entire *per diem* should be included in her average weekly wage calculation only if she had no expenses.

At the arbitration hearing, the claimant testified that in 1997 and 1998, she flew primarily to Hawaii, and although she was unable recall the amounts she spent on these trips, she stated that she did not spend the full *per diem*. Additionally, the claimant testified that in 2000, she flew primarily to Japan and that, while her *per diem* payments were approximately $230 for each trip, she would only spend around $50, which included $18 for a Japanese hot bath. She estimated that she would spend $10 to $15 at the grocery store in Japan. This evidence demonstrates that at least a portion of the *per diem* payments received by the claimant was used to reimburse travel expenses incurred as a result of her employment. However, because the evidence in the record does not support the conclusion that the claimant incurred no expenses while traveling for United, the entire *per diem* payments which the claimant received did not constitute real economic gain and should not be included when computing her average weekly wage. For this reason, we conclude that the Commission's calculation of the claimant's average weekly wage and its dependent calculations of the TTD benefits, maintenance benefits, and wage differential payments to which the claimant is entitled are against the manifest weight of the evidence.

In arguing for affirmance, the claimant maintains that the reimbursements for her travel expenses should not be excluded from her average weekly wage, absent evidence of the actual expenses she incurred. Such a rule, however, would improperly shift the burden of proof to United to prove that the *per diem* payments did not represent real economic gain. The claimant, and not United, had the burden of proving her average weekly wage. See *Cook*, 231 Ill. App. 3d at 731. As noted above, the record reflects that the claimant presented some evidence from which it could be inferred that the *per diem* payments she received exceeded her actual expenses. Consequently, this cause must be remanded to the Commission for a determination as to whether, and to what extent, the claimant's *per diem* payments exceeded her actual expenses.

For the foregoing reasons, we (1) reverse that portion of the circuit court's order which confirmed the Commission's calculation of the claimant's average weekly wage and its dependent calculations of the TTD benefits, maintenance benefits, and wage differential payments to which the claimant is entitled and affirm the order in all other respects; (2) vacate the Commission's calculation of the claimant's

average weekly wage and its dependent calculations of the TTD benefits, maintenance benefits, and wage differential payments to which the claimant is entitled; and (3) remand this cause to the Commission to determine whether, and to what extent, the *per diem* payments exceeded the claimant's actual expenses, and based thereon recalculate the TTD benefits, maintenance benefits, and wage differential payments to which the claimant is entitled.

Circuit court's order is affirmed in part and reversed in part; Commission's decision is vacated in part and the cause is remanded to the Commission with directions.

McCULLOUGH, P.J., and GROMETER, HOLDRIDGE, and DONOVAN, JJ., concur.