COPPERWELD TUBING PRODUCTS COMPANY, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Jose Santoyo, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—09—1422WC

Opinion filed June 22, 2010.

Inman & Fitzgibbons, Ltd., of Chicago (Stephen M. McClary, of counsel), for appellant.

Lewis, Davidson & Hetherington, Ltd., of Chicago (Peter C. Bobber, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Copperweld Tubing Products Company (Copperweld) appeals from an order of the circuit court which confirmed a decision of the Illinois Workers' Compensation Commission (Commission) that awarded the claimant, Jose Santoyo, wage differential benefits pursuant to section 8(d)(1) of the Workers' Compensation Act (Act) (820 ILCS 305/8(d)(1) (West 2000)). For the reasons that follow, we reverse that portion of the circuit court's judgment which confirmed the Commission's calculation of the wage differential to which the claimant is entitled and remand this matter to the Commission for a recalculation of the claimant's wage differential benefits.

The following factual recitation is taken from the evidence presented at the arbitration hearing held on July 19, 2006, and November 9, 2006.

The claimant was employed by Copperweld as a mill operator. His duties included setting up the machinery for production and required the use of a sledge hammer, crowbar, air tools, and wrenches.

The claimant testified that, on November 28, 2001, he was pulling a 35- to 50-pound spacer out of a shaft, when the spacer struck his body and dropped to the floor. According to the claimant, he immediately felt pain in his left elbow.

The following day, Copperweld sent the claimant to the Ingalls Occupational Health Clinic. He was diagnosed with a left elbow strain and was instructed to return to work with the restrictions of only occasional lifting or carrying more than 30 pounds and no repetitive use of his left arm.

The claimant returned to work, but noticed an increase in the pain in his left side following the accident. The claimant eventually came under the care of Dr. Henry Fuentes, an orthopedic surgeon who had previously treated him for an injury to his right elbow. When Dr. Fuentes examined the claimant on January 2, 2002, he diagnosed the claimant with left lateral epicondylitis. Dr. Fuentes removed the claimant from work and ordered occupational therapy.

After the therapy failed to relieve the claimant's symptoms, Dr. Fuentes recommended surgery. On September 20, 2002, the claimant underwent an anterior submuscular transposition of his left ulnar nerve.

Following the surgery, the claimant continued to complain of pain and weakness in his left arm and hand. On December 11, 2002, another surgeon, Dr. Daniel Mass, performed a second submuscular transposition of the left ulnar nerve, as well as a lysis of the ulnar nerve and a nerve graft.

At the request of Copperweld's insurance carrier, the claimant was examined by Dr. Brian Cole on August 4, 2003, and March 1, 2004. As of the second examination, Dr. Cole concluded that further surgical intervention of the claimant's left ulnar nerve would be required.

On March 5, 2004, Dr. Mass performed a left ulnar nerve neurolysis with vein-wrapping. Dr. Mass released the claimant from his care on August 2, 2004, with the work restrictions of no lifting greater than 30 pounds with his left arm.

The claimant returned to Dr. Cole for a third time on November 30, 2004. On that occasion, Dr. Cole recommended that the claimant undergo a functional capacity evaluation (FCE). The FCE was performed on January 13, 2005, at Occupational and Hand Therapy, Ltd. The results of the FCE revealed that the claimant possessed the ability to work at the light- to medium-physical demand level; whereas, his job as a mill operator required a heavy-physical demand level.

At the request of his attorney, the claimant met with Edward Steffan, a vocational rehabilitation counselor, on October 25, 2004. Steffan issued a written report, noting that, without professional assistance, the claimant would likely be able to obtain a position paying between $8 and $12 per hour.

On August 17, 2005, the claimant met with Martin Power, a vocational rehabilitation counselor employed by Copperweld's insurance carrier. Power concluded that the claimant could not return to work at Copperweld. Power also believed that the claimant could still obtain a job as a light- to medium-level production worker, such as an office cleaner or security guard.

In 2005, the claimant commenced a self-directed job search. On his own initiative, the claimant enrolled in a security guard training course in February of 2006. Following the completion of this course, the claimant was able to obtain employment as a security guard with Securatex, Ltd. (Securatex). The claimant testified that he was paid $8 per hour and worked 40 hours a week. He also stated that the job was within his physical restrictions.

The claimant worked at Securatex for 2½ months. At the arbitration hearing, the claimant testified that he quit when his wife found a "better job," stating that "[i]t was better for our family for me to stay home and she go to work." The claimant admitted that he had not searched for another job since leaving Securatex and had been receiving social security disability benefits since 2004.

The claimant presented the testimony of Duane Lee, a former coworker at Copperweld. Lee testified that he and the claimant were both mill operators at Copperweld, they both worked similar hours, they both worked the same shift, and they both were paid the same

hourly rate. Lee estimated that he earned approximately $78,000 in 2005. He stated that he has worked and continues to work overtime. Lee admitted that, while a portion of the overtime he worked was mandatory, he worked some of the overtime on a voluntary basis.

A copy of the applicable collective bargaining agreement was admitted into evidence. The agreement contained a wage schedule for numerous employees, including mill operators.

At the conclusion of the hearing, the arbitrator found that the claimant sustained injuries on November 28, 2001, arising out of and in the course of his employment with Copperweld. The arbitrator awarded the claimant temporary total disability (TTD) benefits for 219$^1$/$_7$ weeks. The arbitrator also ordered Copperweld to pay: (1) $1,952.39 for necessary medical expenses; (2) $43.74 for travel expenses; and (3) $169 for reasonable vocational rehabilitation expenses. Finally, the arbitrator entered a wage differential award of $534.16 per week, commencing on March 17, 2006, and continuing for the duration of the claimant's disability. The wage differential award was calculated based upon the difference between the claimant's wages of $8 per hour, or $320 per week, as a security guard at Securatex and the $78,000 Lee testified he earned as a mill operator in 2005.

Copperweld filed a petition for review of the arbitrator's decision before the Commission. In a unanimous decision, the Commission affirmed and adopted the decision of the arbitrator.

Copperweld then sought judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the decision of the Commission, and this appeal followed.

Initially, Copperweld contends that the Commission's decision to award the claimant a wage differential award is against the manifest weight of the evidence. We disagree.

To qualify for a wage differential award, a claimant must prove: (1) a partial incapacity that prevents him from pursuing his usual and customary line of employment and (2) an impairment of earnings. 820 ILCS 305/8(d)(1) (West 2000); *First Assist, Inc. v. Industrial Comm'n*, 371 Ill. App. 3d 488, 494, 867 N.E.2d 1063 (2007). Whether a claimant has satisfied each element is a question of fact to be resolved by the Commission, whose determination in this regard will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Morton's of Chicago v. Industrial Comm'n*, 366 Ill. App. 3d 1056, 1061, 853 N.E.2d 40 (2006). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 64, 862 N.E.2d 918 (2006).

In its briefs before this court, Copperweld does not contest that the injuries the claimant incurred on November 28, 2001, prevent him

from returning to his former occupation as a mill operator. Rather, its claim of error is addressed solely to the question of whether the claimant sustained his burden of proving an impairment of earnings. Specifically, Copperweld argues that, as of the date of the arbitration hearing, the claimant had voluntarily removed himself from the labor market and, thus, was no longer suffering from a loss in earning capacity. In support of this proposition, Copperweld cites to *Durfee v. Industrial Comm'n*, 195 Ill. App. 3d 886, 553 N.E.2d 8 (1990).

In *Durfee*, the claimant left his job as a repairman following a work-related injury. The claimant's treating physician placed no physical restrictions on him and suggested that he attempt to perform his former job on a trial basis. Instead, the claimant accepted a lower-paying position with a school church; a job that coincided with his clerical interests. Although the claimant testified that this was the best position he could find, this court noted that there was no evidence that the claimant attempted to obtain any other form of employment. *Durfee*, 195 Ill. App. 3d at 890. Based on these facts, we concluded that the Commission could have reasonably determined that the claimant had not shown a loss of earning capacity. *Durfee*, 195 Ill. App. 3d at 890.

Contrary to Copperweld's contention, we do not believe that *Durfee* stands for the proposition that the claimant's voluntary decision to remove himself from the labor market precludes a wage differential award. Rather, our holding in *Durfee* was based, in part, on the fact that the claimant in that case made a personal choice to accept a lower-paying job and failed to prove that he could not obtain a better-paying position.

■ In determining whether a reduction in earning capacity has occurred, section 8(d)(1) of the Act instructs the Commission to look to the amount the claimant "is earning *or is able to earn* in some suitable employment or business after the accident." (Emphasis added.) 820 ILCS 305/8(d)(1) (West 2000). Consequently, even though the claimant in this case was not presently employed, he was entitled to a wage differential award, so long as he established his current earning capacity. See *Franklin County Coal Corp. v. Industrial Comm'n*, 398 Ill. 528, 532, 76 N.E.2d 457 (1948) ("The test is the capacity to earn, not necessarily the amount earned"). Based on our review of the record, we conclude that he sustained his burden in this regard.

At the arbitration hearing, the claimant testified that he conducted a self-directed job search and obtained a position within his physical capabilities, a job as a security guard at Securatex. The claimant stated that he was paid $8 per hour and worked 40 hours each week. Although Copperweld asserts that it was speculative for the Commis-

sion to rely on the claimant's employment at Securatex as he had not worked there for six months prior to the arbitration hearing, we do not believe that the claimant's employment at Securatex was too far removed to be considered speculative. Furthermore, the rate of pay for the security guard position at Securatex fell within the $8 to $12 range the claimant's vocational rehabilitation counselor, Edward Steffan, believed he could obtain without professional assistance.

Under the facts of this case, the Commission could reasonably rely on the claimant's job at Securatex in determining that he had proven that his earnings were impaired. We, therefore, conclude that the Commission's finding that the claimant was entitled to a wage differential award is not against the manifest weight of the evidence.

Alternatively, Copperweld takes issue with the Commission's computation of the claimant's wage differential award. Copperweld contends that the Commission erred in calculating the claimant's average weekly wage both before and after his accident.

■ An employee who, as a result of an accidental injury, becomes partially incapacitated and cannot pursue his "usual and customary line of employment" is entitled to receive a wage differential award "equal to 66$^2$/$_3$% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." 820 ILCS 305/8(d)(1) (West 2000). The Commission's calculation of an employee's wage differential award is a factual finding, which will not be set aside on review unless it is contrary to the manifest weight of the evidence. See *United Airlines, Inc. v. Illinois Workers' Compensation Comm'n*, 382 Ill. App. 3d 437, 440-42, 887 N.E.2d 888 (2008); *First Assist, Inc.*, 371 Ill. App. 3d at 495-97.

With regard to Copperweld's contention that the Commission erroneously calculated the amount the claimant could earn after his work-related accident, it asserts that the claimant's own vocational expert, Steffan, opined that the claimant could earn up to $12 per hour. Copperweld requests that the matter be remanded to the Commission with instructions to recalculate the claimant's wage differential award using the $12 hourly wage as the basis of the claimant's current earning capacity, not the $8 per hour relied upon by the Commission.

As previously discussed, it was reasonable for the Commission to rely on the claimant's employment at Securatex in determining his impairment of earnings. Based on the claimant's wages and the number of hours he worked while employed at Securatex, the Com-

mission could reasonably conclude that the claimant's present earning capacity was $8 per hour or $320 per week. We, therefore, reject Copperweld's argument that the Commission's decision in this regard is against the manifest weight of the evidence.

Copperweld also contends that the Commission erroneously relied upon the testimony of Duane Lee in calculating the amount the claimant would have been able to earn as a mill operator had he not suffered a work-related injury. Copperweld maintains that, in direct contradiction to the language of section 10 of the Act, Lee's testimony that he earned $78,000 in 2005 improperly included wages for overtime worked on a voluntary basis.

Although the claimant asserts that section 10 of the Act does not apply to a wage differential award, the express language of this section states that the definition of average weekly wage contained therein shall form the "basis for computing the compensation provided for in Sections 7 and 8 of the Act." 820 ILCS 305/10 (West 2000). As a wage differential award is provided for under section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2000)), section 10's definition of average weekly wage clearly applies to this issue. See *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 555-56, 813 N.E.2d 119 (2004) (applying section 10 to the computation of a wage differential award).

Section 10 of the Act explicitly states that overtime is excluded from the calculation of an employee's average weekly wage. 820 ILCS 305/10 (West 2000). The Act, however, does not define "overtime." Nevertheless, this court has consistently interpreted the overtime exclusion to include those hours "in excess of an employee's regular weekly hours of employment that he or she is not required to work as a condition of his or her employment or which are not part of a set number of hours consistently worked each week." *Airborne Express, Inc. v. Illinois Workers' Compensation Comm'n*, 372 Ill. App. 3d 549, 554, 865 N.E.2d 979 (2007).

In this case, Lee testified that he and the claimant were both mill operators at Copperweld, they both worked similar hours, they both worked the same shift, and they were both paid the same hourly rate. Lee further testified that in 2005 he earned around $78,000 as a mill operator. Lee, however, stated that he has worked and continues to work overtime. While Lee testified that a portion of the overtime he worked was mandatory, he also admitted that some of the overtime he worked was voluntary.

In adopting the decision of the arbitrator, the Commission found the testimony of Lee to be credible and utilized the $78,000 Lee earned in 2005 as the basis for the amount the claimant would have earned if he were still employed as a mill operator. Based on Lee's testimony,

however, it is apparent that at least a portion of the $78,000 he earned in 2005 included wages for voluntary overtime and, thus, should not have been included in the Commission's calculation of the claimant's wage differential benefits. See *Airborne Express, Inc.*, 372 Ill. App. 3d at 555. For this reason, we conclude the Commission's calculation of the amount which the claimant would be able to earn in the full performance of his duties as a mill operator is against the manifest weight of the evidence.

Notwithstanding this conclusion, we note that the record reflects that additional evidence was presented from which the claimant's average weekly wage as a mill operator might be calculated; namely, the wage schedule contained in the collective bargaining agreement. Despite Copperweld's assertions to the contrary, we believe that questions of fact still remain and, therefore, decline its invitation for us to decide this issue on appeal. Accordingly, this cause must be remanded to the Commission for a recalculation of the wage differential benefits to which the claimant is entitled.

■ Based upon the foregoing analysis, we reverse that portion of the circuit court's order which confirmed the Commission's calculation of the wage differential benefits to which the claimant is entitled; affirm the circuit court's order in all other respects; vacate the Commission's calculation of the amount that the claimant would have been able to earn in the full performance of his duties as a mill operator and its dependent calculation of wage differential payments to which the claimant is entitled; and remand this cause to the Commission with instructions to calculate the amount that the claimant would have been able to earn in the full performance of his duties as a mill operator, omitting therefrom evidence properly excluded by section 10 of the Act, and, based thereon, recalculate the wage differential payments to which the claimant is entitled.

Circuit court affirmed in part and reversed in part; Commission's decision vacated in part; and cause remanded to the Commission with directions.

McCULLOUGH, P.J., and HUDSON, HOLDRIDGE, and DONOVAN, JJ., concur.