# Illinois Official Reports

## Appellate Court

***Levato v. Illinois Workers' Compensation Comm'n,***
**2014 IL App (1st) 130297WC**

| | |
|---|---|
| Appellate Court Caption | PHILLIP LEVATO, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (The City of Chicago, Appellees). |
| District & No. | First District, Workers' Compensation Comm'n Division<br>Docket No. 1-13-0297WC |
| Filed | June 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the record showed that an issue existed as to the propriety of a wage-differential award but the issue was not resolved, the portion of the trial court's judgment confirming the award of permanent partial disability (PPD) benefits to claimant for the 35% loss of use of a person as a whole was reversed, the cause was remanded to the Workers' Compensation Commission for a ruling on claimant's entitlement to a wage-differential award and the entry of an award, if appropriate, or reinstatement of the PPD award for 35% loss of use of a person as a whole if a wage-differential award is found inappropriate. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-50746; the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Circuit court judgment affirmed in part and reversed in part.<br>Commission decision vacated in part and cause remanded to the Commission. |

Counsel on Appeal

Joseph J. Spingola, of Chicago, for appellant.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee.

Panel

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hudson, Harris, and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1     The claimant, Phillip Levato, appeals the circuit court order which confirmed the decision of the Illinois Workers' Compensation Commission (Commission) finding that he failed to prove that he was permanently and totally disabled after sustaining a lumbar spine injury while in the employ of the City of Chicago (the City). The claimant also appeals the circuit court order which confirmed the Commission's decision awarding him permanent partial disability (PPD) benefits for a 35% loss of person as a whole, pursuant to section 8(d)(2) of the Workers' Compensation Act (Act) (820 ILCS 305/8(d)(2) (West 2006)) instead of wage-differential benefits under section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2006)). For the reasons that follow, we affirm in part, reverse in part, vacate the Commission's decision in part, and remand the matter to the Commission with directions.

¶ 2     We are aware that the claimant filed applications for adjustment of claim with the Commission as the consequence of a February 24, 2004, right toe injury, and a May 14, 2004, accident which injured his right arm, abdomen and lower back. This appeal, however, does not involve any issues pertaining to those claims.

¶ 3     The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on August 4, 2010, relating to a claim made by the claimant for injuries to his lower back sustained on September 6, 2006.

¶ 4     The claimant testified that he began working for the City in 1994 in the graffiti unit of the streets and sanitation department. On September 6, 2006, the claimant injured his lower back while moving a five-gallon bucket of paint. He saw a physician at Mercy Works the next day, reporting numbness and tingling and pain shooting down his right leg. On September 14, 2006, the claimant had an MRI, which showed disc dessication at L3-L4 through L5-S1 with minimal disc bulging at L4-L5, an annual tear at L5-S1, and bilateral facet arthropathy.

¶ 5 In October 2006, the claimant began treating with Dr. Srdjan Mirkovic, who recommended physical therapy. However, the claimant was told to delay physical therapy for his back until his toe injury had healed.

¶ 6 On October 11, 2006, the claimant saw Dr. Charles Slack for a second opinion. Dr. Slack ordered epidural steroid injections and prescribed Lidoderm patches to treat the claimant's back pain. In March 2007, the claimant began physical therapy for his back.

¶ 7 On October 22, 2007, the claimant returned to Dr. Slack, who ordered a second MRI. The MRI dated October 26, 2007, showed disc desiccation changes at L3-L4, L4-L5, and L5-S1, with diffuse disc bulging at L3-L4, facet and ligament hypertrophy, and some slight narrowing of the central canal. It also showed diffuse disc bulges at L4-L5 and L5-S1 with small posterior disc protrusions that were more pronounced at L5-S1. Dr. Slack ordered diagnostic lumbar facet blocks to treat the claimant's pain. Dr. Milorad Cupic administered four lumbar facet nerve block injections to the claimant to treat his lumbar spine pain.

¶ 8 On January 31, 2008, the claimant and Dr. Slack discussed surgery, but they agreed not to proceed with surgery as Dr. Slack did not consider him a good surgical candidate.

¶ 9 On April 1, 2008, the claimant underwent a functional capacity evaluation (FCE), which determined that he could work at a sedentary physical demand level, meaning he could not lift more than 10 pounds. However, the evaluator noted that the claimant's subjective complaints were not consistent with his varying performances on the physical tests, suggesting that he was not demonstrating his true capabilities on the tests.

¶ 10 On April 28, 2008, the claimant saw Dr. Slack, who released him to sedentary work with a restriction not to lift any more than 10 pounds.

¶ 11 On October 16, 2008, the claimant was examined by Dr. Samuel Chmell, an orthopedic surgeon, at the request of his attorney. Regarding the lumbar spine, Dr. Chmell diagnosed the claimant with traumatic aggravation of degenerative disc disease of the lumbosacral spine and right lower extremity radiculopathy. He also noted that the claimant had diminished range-of-motion in his shoulder post-surgical repair, and traumatic arthritis/hallux rigidus in his right big toe joint. Based on the claimant's medical history and examination, Dr. Chmell opined that the claimant required ongoing pain treatment and was "fully disabled for gainful employment on a permanent basis." He stated that, in arriving at his opinion, he relied "heavily upon the results of the functional capacity evaluation [and] also upon [his] examination of the [claimant]."

¶ 12 Steven Blumenthal, a vocational rehabilitation specialist who evaluated the claimant, reported that he completed the eighth grade, lacked computer skills, had experience only as a laborer and cable installer, and that he was unable to sit, stand, or drive for any length of time. On general educational testing, the claimant performed around the high school or community college level, demonstrating an ability to learn on-the-job skills. However, based on the claimant's work history, education, vocational testing, and medical history and exams, Blumenthal opined that "there is not a stable labor market for him to obtain competitive employment" and that the claimant "is not seen as a good candidate for vocational rehabilitation services."

¶ 13 The City submitted a labor market survey report prepared by Patrick Conway of Genex, stipulating that Conway never met or tested the claimant before rendering his opinion.

Conway's report stated that he located 15 prospective employers which had positions appropriate for the claimant and that the positions paid between $8 and $20 per hour.

¶ 14    The claimant testified that the City informed him that he was required to look for employment and submit a list of at least 10 jobs he applied for on a weekly basis. He stated that he complied with the City's requirement and had applied for over 200 jobs. He admitted he applied randomly to employers, some of which were not hiring at the time he submitted an application. The claimant stated that the City never offered him vocational services to assist with his job search.

¶ 15    At the time of the arbitration hearing, the claimant stated that his toe and foot swell and cause him to lose his balance. He testified that he cannot raise his right shoulder "very high" and the joint "pops and clicks." He stated that he requires a cane to walk because it helps take pressure off his back, and he cannot traverse stairs easily or walk more than half a block without his back "locking up." The claimant testified that, at times, he cannot get out of bed and that it takes him three hours to get ready in the morning. He stated he has his son tie his shoes because he cannot bend down.

¶ 16    Following the hearing on August 4, 2010, the arbitrator found that the claimant sustained accidental injuries arising out of and in the course of his employment and ordered the City to pay him 75 weeks of PPD benefits under section 8(d)(2)[1] of the Act (820 ILCS 305/8(d)(2) (West 2006)) for 15% loss of use of a person as a whole. The arbitrator further found that the claimant was not permanently and totally disabled under section 8(f) of the Act (820 ILCS 305/8(f) (West 2006)) and that he was not entitled to wage-differential benefits under section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2006)). The arbitrator found that the claimant's injuries did not render him permanently and totally disabled and were not the type "generally associated with wage differential or odd-lot awards."

¶ 17    In his decision, the arbitrator specifically noted that he did not find Dr. Chmell's opinion that the claimant was permanently and totally disabled credible, considering he claimed to have relied on the FCE that determined that the claimant was employable at the sedentary demand level. Similarly, the arbitrator did not find Blumenthal's opinion that the claimant was totally disabled to be credible because he failed to consider evidence of the claimant's symptom magnification. Further, the arbitrator also noted that the claimant appeared "quite at ease and casual in court" and "sported a rather impressive suntan for someone" claiming to be "constantly in bed, sleep deprived, and in intractable pain." He found the claimant's self-directed job search unimpressive as it consisted of contacting employers who were not hiring.

¶ 18    The claimant sought a review of the arbitrator's decision before the Commission. On November 2, 2011, the claimant filed a petition to supplement his prayer for relief to include a request for wage-differential benefits under section 8(d)(1) of the Act. On December 28, 2011, the Commission denied the claimant's petition. On May 4, 2012, the Commission modified the arbitrator's decision, increasing the claimant's PPD benefits to 35% loss of use of a person as a whole. In its decision, the Commission agreed with the arbitrator that the claimant had failed to prove he was permanently and totally disabled. Further, the Commission agreed that both Dr. Chmell's and Blumenthal's opinions lacked credibility

---

[1]The arbitrator's decision states the person-as-a-whole benefit was awarded under section 8(e) of the Act; however, person-as-a-whole benefits are addressed in section 8(d)(2) of the Act.

because they did not acknowledge that the FCE demonstrated that the claimant could work at a sedentary demand level and that the evaluator noted evidence of symptom magnification. The Commission did not comment on the claimant's eligibility for wage-differential benefits.

¶ 19     The claimant sought judicial review of the Commission's decision in the circuit court of Cook County. On January 10, 2013, the circuit court confirmed the Commission's decision. The claimant now appeals.

¶ 20     The claimant first argues that the Commission's finding that he was permanently partially disabled instead of permanently totally disabled is against the manifest weight of the evidence. We disagree.

¶ 21     The question of whether a claimant is permanently and totally disabled is one of fact to be resolved by the Commission, and its resolution of the issue will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Ceco Corp. v. Industrial Comm'n*, 95 Ill. 2d 278, 288-89 (1983). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992). Whether a reviewing court might reach the same conclusion is not the test of whether the Commission's determination of a question of fact is supported by the manifest weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982).

¶ 22     In *Ceco*, the supreme court held:

> "[A]n employee is totally and permanently disabled when he 'is unable to make some contribution to the work force sufficient to justify the payment of wages.' [Citations.] The claimant need not, however, be reduced to total physical incapacity before a permanent total disability award may be granted. [Citations.] Rather, a person is totally disabled when he is incapable of performing services except those for which there is no reasonable stable market. [Citation.]" *Ceco*, 95 Ill. 2d at 286-87.

¶ 23     Alternatively, if a claimant's disability is "not so limited in nature that he [is] not obviously unemployable, or if there is no medical evidence to support a claim of total disability, to be entitled to PTD benefits under the Act, the claimant has the burden of establishing the unavailability of employment to a person in his circumstances; that is to say that he falls into the 'odd-lot' category." *Ameritech Services, Inc. v. Illinois Workers' Compensation Comm'n*, 389 Ill. App. 3d 191, 204 (2009). The claimant can satisfy his burden of proving that he falls into the "odd-lot" category by (1) showing diligent but unsuccessful attempts to find work or (2) by showing that he will not be regularly employed in a well known branch of the labor market. *Id.*

¶ 24     Here, we cannot find that the Commission's decision that the claimant was not permanently and totally disabled is against the manifest weight of the evidence. The FCE demonstrated that the claimant was able to perform at a sedentary physical demand, and Dr. Chmell's opinion, which he stated was based on the FCE, contradicted the very clear conclusions of the FCE. Further, neither Dr. Chmell nor Blumenthal mentioned the evidence of the claimant's symptom magnification noted by the FCE evaluator. The Commission, having found the opinions of Dr. Chmell and Blumenthal unpersuasive, was left to consider: the FCE report; Conway's report noting several sedentary positions, including administrative "desk" jobs in a variety of industries, that were suitable for the claimant; the April 28, 2008, medical record of Dr. Slack, who released the claimant to sedentary work; and the testimony

of the claimant himself, whom the Commission found lacked credibility. The Commission also found the claimant's job search was "unimpressive" as he applied to companies that were not hiring. Thus, the evidence supports the Commission's determination that the claimant was not permanently and totally disabled under either a medical or an "odd-lot" theory. Accordingly, we will not disturb the Commission's finding that the claimant was permanently and partially disabled.

¶ 25 In an alternative argument, the claimant asserts that he should have been awarded wage-differential benefits under section 8(d)(1) of the Act instead of the award for 35% loss of the person as a whole under section 8(d)(2) of the Act. The City argues that the claimant is not entitled to an award pursuant to section 8(d)(1) because he "did not present evidence supporting a wage-differential award." Although we render no opinion on whether the claimant is entitled to an award under section 8(d)(1), we conclude that the Commission should have decided the issue on the merits.

¶ 26 As noted earlier, the claimant filed a petition to supplement the prayer for relief in the statement of exceptions he filed before the Commission to raise the alternative argument of his entitlement to an award of wage-differential benefits. That petition was denied, and the Commission never addressed the wage-differential issue on the merits. However, section 19(e) of the Act provides that the Commission shall "review the decision of the Arbitrator and all questions of law or fact which appear from the statement of facts or transcript of evidence." 820 ILCS 305/19(e) (West 2006). We believe that the question of the claimant's entitlement to an award under section 8(d)(1) appears from the evidence of record in this case.

¶ 27 The Act provides for various types of compensation. Section 8(d) of the Act specifies two distinct types of compensation. Section 8(d)(1) involves a wage-differential award (820 ILCS 305/8(d)(1) (West 2006)), and section 8(d)(2) involves a percentage-of-the-person-as-a-whole award (820 ILCS 305/8(d)(2) (West 2006)). Our supreme court has expressed a preference for wage-differential awards over scheduled awards. See *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721, 727 (2000) (citing *General Electric Co. v. Industrial Comm'n*, 89 Ill. 2d 432, 438 (1982)). "As a general matter, section 8(d)(2) applies to those cases in which a claimant suffers injuries that partially incapacitate him from pursuing the usual and customary duties of his line of employment, but do not cause him to suffer an impairment of earning capacity." *Gallianetti*, 315 Ill. App. 3d at 728-29. Section 8(d)(2) may also apply in circumstances where a claimant suffers an impairment of earning capacity but waives his right to recover under section 8(d)(1). *Id.* at 729.

¶ 28 To qualify for a wage-differential award, the claimant must prove a partial incapacity that prevents him from pursuing his usual and customary line of employment and an impairment of earnings. In this case, evidence of both appears in the record. The opinions of Dr. Chmell and Blumenthal, along with the results of the claimant's FCE, all support the proposition that the claimant is incapacitated to a level which prevents him from pursuing his usual and customary employment for the City. On the issue of earnings impairment, the Commission fixed the claimant's average weekly wage at $1,145.35, and Conway, the City's own witness, fixed the pay for positions appropriate for the claimant's present condition between $8 and $20 per hour.

¶ 29 Nothing in the record suggests that the claimant explicitly waived his right to a wage-differential award. Nevertheless, the City argues that he waived his right to an award

under section 8(d)(1) by failing to introduce evidence in support of a wage-differential award before the arbitrator. *Gallianetti*, 315 Ill. App. 3d at 729; *Freeman United Coal Mining Co. v. Industrial Comm'n*, 283 Ill. App. 3d 785, 791 (1996). However, on the issue of the claimant having failed to present "any evidence regarding his entitlement to a wage-differential award" (*Gallianetti*, 315 Ill. App. 3d at 729), our reading of the record discloses that the claimant introduced evidence of his incapacitation and the amount he was earning at the time of his injury, and the City supplied evidence regarding the claimant's postaccident earning capacity.

¶ 30    As the record discloses an issue concerning the propriety of a wage-differential award, we believe that the Commission was obliged to resolve the question, especially in the face of the claimant's petition requesting such alternate relief. We, therefore, reverse that portion of the circuit court's judgment which confirmed the Commission's award of PPD benefits for 35% loss of use of a person as a whole, vacate the Commission's PPD award, and remand the matter to the Commission with directions to decide the claimant's entitlement to a wage-differential award on the merits. We wish to be clear that we are not instructing the Commission on the conclusion it should reach on remand, only that it should decide the issue. In the event that Commission determines that the claimant is entitled to a wage-differential award, it should make the award. If, on the other hand, the Commission decides that he is not entitled to a wage-differential award under section 8(d)(1) of the Act, it is directed to reinstate its award of PPD benefits for 35% loss of use of a person as a whole under section 8(d)(2).

¶ 31    Based upon the foregoing analysis, we: reverse that portion of the circuit court's judgment which confirmed the Commission's award of PPD benefits for 35% loss of use of a person as a whole; affirm the circuit court's judgment in all other respects; vacate that portion of the Commission's decision which awarded the claimant PPD benefits pursuant to section 8(d)(2) of the Act; and remand this matter to the Commission with directions.

¶ 32    Circuit court judgment affirmed in part and reversed in part.

¶ 33    Commission decision vacated in part and cause remanded to the Commission.