# Illinois Official Reports

## Appellate Court

---

**_Crittenden v. Illinois Workers' Compensation Comm'n_, 2017 IL App (1st) 160002WC**

---

| | |
|---|---|
| Appellate Court Caption | CARL CRITTENDEN, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (The City of Chicago, Appellee). |
| District & No. | First District, Workers' Compensation Commission Division Docket No. 1-16-0002WC |
| Filed | February 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-50296; the Hon. Edmund Ponce De Leon, Judge, presiding. |
| Judgment | Circuit court judgment reversed. Commission decision vacated and cause remanded to the Commission with directions. |
| Counsel on Appeal | Joseph J. Spingola, of Oak Brook, for appellant. Stephen R. Patton, Corporation Counsel, of Chicago, for appellee. |
| Panel | JUSTICE MOORE delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justices Hoffman, Hudson, and Harris concurred in the judgment and opinion. |

¶ 1    The claimant, Carl Crittenden, appeals the judgment of the circuit court of Cook County, which confirmed the decision of the Illinois Workers' Compensation Commission (Commission) in favor of the employer, the city of Chicago (City). An arbitrator awarded the claimant, *inter alia*, a wage differential pursuant to section 8(d)(1) of the Workers' Compensation Act (Act) (820 ILCS 305/8(d)(1) (West 2012)), and the Commission reduced the amount of the wage differential. The circuit court entered a judgment confirming the Commission's decision. The claimant now appeals the circuit court's judgment. For the following reasons, we reverse, vacate the Commission's decision, and remand this matter to the Commission with directions.

¶ 2                                    FACTS

¶ 3    The claimant filed an application for benefits under the Act. 820 ILCS 305/1 *et seq.* (West 2012). An arbitration hearing was conducted on January 4, 2013, wherein the following evidence was presented. The claimant testified that he was employed by the City as a sanitation laborer for 27 years. He injured his lower back on April 11, 2008, while bending over, lifting a bag of compost, and throwing it into the back of a garbage truck.

¶ 4    After receiving medical treatment, the claimant saw Dr. Kern Singh on September 3, 2009. Dr. Singh recommended that the claimant undergo a functional capacity evaluation (FCE), which was conducted on October 17, 2009. The FCE indicated that the claimant reported current work limitations of 20 pounds of lifting—with additional limitations on bending and standing—and such restrictions could not be accommodated by his employer. The FCE concluded that the claimant could only meet light physical demands and could not satisfy the physical requirements of his previous job. The FCE further indicated that the claimant was at maximal functional improvement and recommended that he never lift more than 20 pounds on an occasional basis and up to approximately 13 pounds on a more frequent basis. Further restrictions included no pushing or pulling with greater than 40 pounds of force; no frequent or repetitive bending or twisting; positional changes as needed to avoid constant standing, walking, or sitting over a full workday; and no walking for more than 10 minutes.

¶ 5    The claimant returned to Dr. Singh on March 18, 2010. After conducting an independent medical reexamination (IME), Dr. Singh concurred that the claimant is able to perform only light-duty work—with a 20-pound lifting restriction—and advised that the restriction is permanent and the claimant has reached his maximum medical improvement (MMI). The claimant was subsequently examined by Dr. Samuel Chmell on March 27, 2010. Dr. Chmell agreed that the claimant had reached his MMI and can never return to his regular job due to the permanent physical restrictions.

¶ 6    The claimant testified that he met Steven Blumenthal, who conducted a vocational rehabilitation assessment on July 27, 2010. Blumenthal did not testify at the hearing, but his report was submitted by the claimant and admitted into evidence as petitioner's exhibit No. 7. The claimant testified that he told Blumenthal that he lost his driver's license following a DUI. Blumenthal's report states that the claimant informed him that he was arrested for DUI in 1995, that his driver's license was suspended after he received two speeding tickets, and that he expected to have his license reinstated in December 2010. The claimant told

Blumenthal that he graduated from high school in 1980, but he testified at the hearing that he had neither graduated nor completed his GED.

¶ 7 Blumenthal's detailed report contains an array of information, including background and medical information, based on his interview with the claimant as well as the results of numerous vocational evaluation tests. Regarding the claimant's work history, Blumenthal's report states that during the six months immediately preceding his injury, he worked part-time cleaning a hospital, where he earned $12 per hour. He also worked part-time as a customer service supervisor for Target from 1997 to 2003, earning $11 per hour. The claimant informed Blumenthal that he is currently able to perform customer service work.

¶ 8 Blumenthal lists several occupations in his report that he opines may be suitable for the claimant in his current physical condition. These include cashier; retail salesperson; counter and rental clerk; hotel, motel, and resort desk clerk; school bus driver; and security guard. Blumenthal lists, based on data from the Illinois Department of Employment Security, the entry hourly wage and the median hourly wage for each occupation. However, Blumenthal notes as follows with regard to these positions:

"it is also very clear that [the claimant] will require specialized job placement assistance to identify job settings where his physical abilities can be accommodated by the employer. Certain job descriptions [*sic*] as an unarmed security guard in a gated community or industrial guard shack where [the claimant] could sit/stand as needed, or as a school bus driver where he could get in and out of the bus to change positions would be consistent with his documented physical abilities [*sic*] ([the claimant] stated he enjoyed driving workers around in the past). Customer service and cashiering, or even hotel clerk positions would require specific accommodations being made by the employer."

¶ 9 Blumenthal notes that the claimant would be a good candidate for vocational rehabilitation job placement services. The report concludes that the claimant will earn $8.25 to $13.78 per hour. Blumenthal notes earlier in his report that $8.25 was the current minimum wage in Illinois at the time of the report. The highest median wage listed in Blumenthal's list of suggested occupations for the claimant is $13.78, the median wage for a school bus driver.

¶ 10 Julie Bose testified on behalf of the City that she is employed by MedVoc Rehabilitation as a rehabilitation counselor. She met the claimant on October 3, 2011, and conducted an initial vocational rehabilitation evaluation. At the meeting, the claimant informed Bose that he never graduated from high school nor obtained a GED. Accordingly, Bose recommended a GED program so the claimant could obtain a high school diploma and have more job opportunities. Bose additionally recommended computer classes and job placement services. She acknowledged that the claimant could not return to his previous job due to his physical limitations and noted his desire to return to work in retail and customer service.

¶ 11 Bose testified that, as part of his program, the claimant was asked to contact a minimum of 10 prospective employers per week, with half of those in person. Bose explained that MedVoc sends weekly job leads. She recommended that the claimant follow up with all of the job leads and send confirmations to MedVoc as he completed applications for employment. After the evaluation, Bose had only indirect contact with the claimant by reviewing his weekly job logs. She indicated that the claimant was not fully compliant with the program and that his level of compliance decreased over time. Bose specified that by

April 2012, the claimant was not submitting attendance sheets from the GED classes nor any documentation on the weekly job leads. Bose further noted the inconsistencies regarding his alleged contacts with potential employers. For example, the claimant stated that he personally went to a certain company on March 23, 2012, but the company had relocated in 2008, making it impossible for the claimant to have contacted the company at the alleged location.

¶ 12    Bose testified that when she first met with the claimant, he informed her that he had two recent DUIs and no driver's license. Knowing that employers generally require reliable transportation, Bose asked the claimant about the possibility of having his driver's license reinstated. The claimant replied that he could not get his license back any time soon. To Bose's knowledge, the claimant never obtained his driver's license while participating in the program.

¶ 13    Bose admitted that none of the job searches submitted to her by the claimant revealed what the jobs paid and that none of her reports provide the wages of any of the suggested jobs because employers do not provide such information until after an interview and sometimes only concurrent with a job offer. The City offered no evidence of the claimant's post-injury earnings potential.

¶ 14    Following the hearing, the arbitrator found, *inter alia*, that the claimant sustained injuries on April 11, 2008, that arose out of and in the course of his employment with the City. The arbitrator further found that the claimant was partially incapacitated from pursuing his usual and customary line of employment as a result of the accident and, accordingly, is entitled to benefits under section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2012)). The arbitrator found that the claimant's injuries resulted in a loss of earnings as provided in section 8(d)(1) and proceeded to calculate the amount of the claimant's wage differential. In so doing, the arbitrator noted that there is no dispute that the claimant would be earning $32.79 per hour if he were able to perform his job with the employer. The arbitrator noted that the vocational experts agreed that cashier and customer service jobs should be targeted for the claimant and that the claimant had earned $11.00 per hour when he left his part-time job at Target. Additionally, the arbitrator noted that Blumenthal gave a range of projected earnings of $8.25 to $13.78 per hour. The arbitrator then stated that "[t]he arbitrator selects $11.00 per hour as a reasonable wage."[1] The arbitrator then arrived at a wage differential rate of $581.06 per week "by multiplying $32.79 by 40 hours to arrive at $1,311.60, subtracting $440.00 ($11.00 per hour x 40) to arrive at $871.60, and dividing that by ⅔."[2] Accordingly, the arbitrator ordered the City to pay the claimant wage differential benefits in the amount of $581.06 per week from April 9, 2012, through January 4, 2013, and continuing thereafter for the duration of the claimant's disability.

¶ 15    The City sought review of the arbitrator's decision before the Commission. On review, the Commission found, *inter alia*, as follows:

[1]We note that the arbitrator could have selected $11 based on the evidence that the claimant earned this wage at his past job at Target or by averaging the range suggested by Blumenthal ($8.25 + $13.78 = $22.03/2 = $11.015).

[2]We note that rather than dividing $871.60 by two-thirds, the arbitrator actually found two-thirds of $871.60 by dividing $871.60 by 3, which equals $290.53, and multiplying that by 2, which equals $581.06.

"Taking the evidence as a whole, the Commission agrees that the [claimant] has clearly shown entitlement to a wage differential[;] however[,] his lack of effort in obtaining alternative suitable employment leads us to determine that he is capable of earning the highest amount that Mr. Blumenthal opined he was capable of earning, $13.78 per hour. We note that while the Respondent could have initially provided more assistance to the [claimant] than it did, but [*sic*] this does not absolve the [claimant's] responsibility to do his best and give his best effort in finding alternative employment. In this case, we do not believe he provided such effort, and as a result have determined the proper weekly wage differential should be $506.93 per week."[3]

¶ 16    The claimant appealed the Commission's decision to the circuit court of Cook County, which confirmed the Commission's decision on December 17, 2015. The claimant now appeals to this court.

¶ 17                                    ANALYSIS

¶ 18    The sole issue on appeal is whether the circuit court erred by confirming the Commission's decision regarding the amount of the wage differential award. Initially, we note the parties disagree regarding the standard of review. The claimant contends that the issue is one of statutory interpretation and is reviewed *de novo*. See *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006). On the other hand, the City argues that the Commission's calculation of an employee's wage differential award is a factual finding, which will not be set aside on review unless it is against the manifest weight of the evidence. See *Copperweld Tubing Products Co. v. Illinois Workers' Compensation Comm'n*, 402 Ill. App. 3d 630, 635 (2010). We find both of these statements to be correct, depending on the issue presented. First, as discussed in further detail below, we find that the issue raised in this case requires this court to interpret the language of the Act. To that extent, we employ a *de novo* standard of review. See *Cassens Transport Co.*, 218 Ill. 2d at 524. However, once we have set forth the proper interpretation of the Act, the issue of whether the Commission properly calculated the wage differential award under the statute as we have interpreted it is subject to a manifest weight of the evidence standard of review. See *Copperweld Tubing Products Co.*, 402 Ill. App. 3d at 635.

¶ 19    The calculation of a wage differential award is governed by section 8(d)(1) of the Act, which provides:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall *** receive compensation for the duration of his disability, *** equal to 66-⅔% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and *the average amount which he *** is able to earn in some suitable employment or business after the accident*." (Emphasis added.) 820 ILCS 305/8(d)(1) (West 2012).

---

[3]In order to arrive at $506.93 per week, the Commission multiplied $32.79 by 40 hours to arrive at $1311.60, subtracting $551.20 (13.78 x 40) to arrive at $760.40, and finding two-thirds of that number by first dividing by 3 and then multiplying by 2 ($760.40/3 = 253.46 x 2 = $506.93.)

¶ 20    "To qualify for a wage-differential award under section 8(d)(1) [of the Act (820 ILCS 305/8(d)(1) (West 2012))], claimant must prove (1) partial incapacity which prevents him from pursuing his 'usual and customary line of employment' and (2) an impairment of earnings." *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721, 730 (2000). In order to prove an impairment of earnings, a claimant must prove his actual earnings for a substantial period before the accident and after he returns to work, or in the event that he has not returned to work, he must prove what he is able to earn in some suitable employment. *Id.* Once the claimant provides evidence of these amounts, it is the Commission's function to use the formula provided in section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2012)) to calculate the amount of the wage differential.

¶ 21    Whether the claimant is entitled to a wage differential is not an issue on appeal. However, the claimant takes issue with the Commission's method of determining "the average amount which [he] is able to earn in some suitable employment or business after the accident." Although Illinois courts have previously set forth the proper standard to be employed in determining "the average amount which [an employee] would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident" (internal quotation marks omitted) (see, *i.e.*, *Deichmiller v. Industrial Comm'n*, 147 Ill. App. 3d 66, 71-74 (1986); *Old Ben Coal Co. v. Industrial Comm'n*, 198 Ill. App. 3d 485, 493 (1990)), no Illinois court has set forth an interpretation of the particular method the Commission is required to use to establish "the average amount which [the employee] is able to earn in some suitable employment or business after the accident," in the event that the employee has not returned to work. Accordingly, we find this to be an issue of first impression and proceed to interpret the Act to resolve this legal issue.

¶ 22    With regard to the interpretation of the Act, the Illinois Supreme Court has provided as follows:

> "In interpreting the Act, our primary goal is to ascertain and give effect to the intent of the legislature. [Citation.] We determine this intent by reading the statute as a whole and considering all the relevant parts. [Citations.] We must construe the statute so that each word, clause, and sentence is given a reasonable meaning and not rendered superfluous, avoiding an interpretation that would render any portion of the statute meaningless or void. [Citation.] We interpret the Act liberally to effectuate its main purpose: providing financial protection for injured workers. [Citation.]" *Cassens Transport Co.*, 218 Ill. 2d at 524.

¶ 23    Here, the relevant statutory language is straightforward and succinct. In making the calculation of a wage differential under section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2012)), the Commission must determine "the average amount which [the claimant] *** is able to earn in some suitable employment or business after the accident." In calculating this average amount, if the claimant is working at the time of the calculation, the claimant must prove his actual earnings for a substantial period after he returns to work, and the Commission may apply his then current average weekly wage to the calculation. See *Gallianetti*, 315 Ill. App. 3d at 730; see also *Levato v. Illinois Workers' Compensation Comm'n*, 2014 IL App (1st) 130297WC, ¶¶ 29-30. However, as in the case at bar, if the claimant is not working at the time of the calculation, the Commission must rely on

functional and vocational expert evidence.[4] See *Gallianetti*, 315 Ill. App. 3d at 730 (labor market survey); *Levato*, 2014 IL App (1st) 130297WC, ¶¶ 12-13 (vocational rehabilitation specialist and labor market survey); *United Airlines, Inc. v. Illinois Workers' Compensation Comm'n*, 2013 IL App (1st) 121136WC, ¶¶ 4-7 (vocational rehabilitation specialists).

¶ 24    In addition, where the claimant is not working at the time of the hearing, it is important to note that section 8(d)(1) requires that an average wage be derived from suitable employment for the claimant. Suitable employment is employment in which the claimant is both able and qualified to perform. See Merriam-Webster's Collegiate Dictionary 1249 (11th ed. 2006) (definition of "suitable" in relation to a candidate for a job is "ABLE, QUALIFIED"). For all of these reasons, we hold that in order to calculate a wage differential award, the Commission must identify, based on the evidence in the record, an occupation that the claimant is able and qualified to perform and apply the average wage for that occupation to the wage differential calculation. As a corollary to this holding, the claimant is required to introduce evidence sufficient for the Commission to identify an occupation that the claimant is able and qualified to perform and the average wage for that occupation. In any case where the Commission identifies an occupation that the claimant is able and qualified to perform, as well as the average wage for that occupation, and applies that average wage to the appropriate part of the formula, the Commission's determination becomes a factual determination and thus will not be disturbed unless it is against the manifest weight of the evidence. See *Copperweld Tubing Products Co.*, 402 Ill. App. 3d at 635.

¶ 25    Having set forth the precise method that the Commission must utilize in determining "the average amount [the claimant] is able to earn in some suitable employment or business after the accident," we turn to the Commission's decision in order to determine whether it was against the manifest weight of the evidence. See *id.* In its decision, the Commission used $13.78 as the average amount the claimant is able to earn. However, the Commission did not identify a suitable occupation for the claimant and, accordingly, did not identify $13.78 as the average amount the claimant is able to earn in any suitable occupation. Rather, the Commission found that the claimant's lack of effort in obtaining alternative suitable employment led the Commission to find that the claimant is capable of earning the highest amount that Mr. Blumenthal opined he was capable of earning, which was $13.78 per hour. Nevertheless, if, based on the record, this court can identify said occupation and average wage of $13.78, we will affirm the Commission's determination. See *Comfort Masters v. Illinois Workers' Compensation Comm'n*, 382 Ill. App. 3d 1043, 1045-46 (2008) (" '[W]e will affirm the *** Commission's decision if there is any legal basis in the record which would sustain that decision, regardless of whether the particular reasons or findings contained in the decision are correct or sound.' " (quoting *Butler Manufacturing Co. v. Industrial Comm'n*, 140 Ill. App. 3d 729, 734 (1986))).

¶ 26    Turning to the record, $13.78 was identified in Blumenthal's report as the average wage of a school bus driver. However, the record is clear that, at the time of the hearing, the

---

[4]We note that in the case where the claimant is working at the time of the calculation but functional and/or vocational evidence is submitted which is sufficient to determine another suitable occupation for the claimant, there is nothing in section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2012)) that would prevent the Commission from utilizing such evidence to determine the average wage the claimant could make in some suitable employment as set forth in this opinion and *vice versa*.

claimant did not possess a driver's license. As such, he was not qualified for the occupation of school bus driver. In addition, there is no other evidence in the record reflecting an occupation that the claimant is able and qualified to perform that has an average wage of $13.78 per hour. Accordingly, the Commission's calculation of the claimant's wage differential is against the manifest weight of the evidence. As such, the circuit court's judgment confirming the Commission's decision must be reversed, the Commission's wage differential award vacated, and this cause remanded to the Commission for further proceedings, including the identification by the Commission of an occupation the claimant is able and qualified to perform and a calculation of the wage differential using the average wage of that occupation.

¶ 27                                          CONCLUSION

¶ 28     For the foregoing reasons, we reverse the judgment of the circuit court that confirmed the Commission's decision, vacate the Commission's decision, and remand this matter to the Commission with directions that the Commission recalculate the claimant's wage differential in accordance with this opinion.

¶ 29     Circuit court judgment reversed.

¶ 30     Commission decision vacated and cause remanded to the Commission with directions.