NOTICE
Decision filed 12/23/19. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2019 IL App (5th) 190142WC-U

NO. 5-19-0142WC

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| MARION HIGH SCHOOL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 19-MR-40 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | Honorable Jeffrey A. Goffinet, |
| COMMISSION *et al.* (Laurie Chapman, Appellee). | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hoffman, Hudson, and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the Commission's decision to use the claimant's stipulated annual salary of $68,388 that she earned at Marion High School as the upper wage bracket figure but reverse where the Commission failed to  make a factual finding as to the average amount the claimant was able to earn after the accident. We direct the Commission on remand to utilize a 52-week work year denominator to calculate the weekly installment amount for the claimant's wage differential award as required by section 8(d)(1) of the Illinois Workers' Compensation Act (820 ILCS 305/8(d)(1) (West 2012)).

¶ 2    Marion High School appeals from the judgment of the circuit court of Williamson County confirming the Illinois Workers' Compensation Commission's wage differential award in favor of the claimant, Laurie Chapman. For the reasons that follow, we affirm, in part, reverse, in part, and remand with directions.

1

¶ 3                                    I. Background

¶ 4     On appeal, the underlying facts are not in dispute, and it is unnecessary to recite them in detail. As such, the essential facts germane to an understanding of the issue on appeal are as follows.

¶ 5     The claimant, a physical education (PE) teacher, filed an application for adjustment of claim pursuant to the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2012)) against her employer, Marion High School, seeking workers' compensation benefits for a low back injury she sustained on October 8, 2008.

¶ 6     Two arbitration hearings were conducted in this matter on November 13, 2014, and December 16, 2014. The evidence demonstrated that the claimant had been a PE teacher for Marion High School since 1993. While at work on October 8, 2008, the claimant suffered a low back injury when she tripped over a student in gym class. The claimant testified that she experienced immediate, severe pain in her low back and received emergency room treatment on October 9, 2008.

¶ 7     Following her injury, the claimant reported numbness and tingling in her right leg, as well as ongoing back pain. The claimant received chiropractic and physical therapy treatments before she was referred to Dr. Matthew Gornet, a board-certified orthopedic surgeon. Dr. Gornet recommended work restrictions for the claimant that included avoiding lifting more than 10 pounds and repetitive bending and lifting, as well as alternating between sitting and standing. After Dr. Gornet diagnosed the claimant with pseudo-arthrosis at L5-S1, she underwent a L5-S1 refusion on July 7, 2010.

¶ 8     It is undisputed that, due to her permanent work restrictions and continued low back pain, the claimant secured a teaching position in the Department of Kinesiology at Southern Illinois

2

University (SIU), starting on August 17, 2015. The claimant taught part-time at SIU because she was unable to physically work full-time, which equated to 12 semester hours, with her low back pain.

¶ 9     On February 25, 2015, the arbitrator issued a decision finding that the claimant had sustained an accident that arose out of and in the course of her employment and that the claimant's current condition of ill-being was causally related to the October 8, 2008, accident. The arbitrator determined the average weekly wage (AWW) to be $1576.55 per week ($61,485.65/39 weeks) based on the claimant's annual salary of $61,485.65 at Marion High School. Additionally, the claimant was awarded temporary total disability (TTD) benefits of $1051.03 per week for 21-6/7 weeks for periods from August 6, 2010, through January 2, 2011, and April 19, 2011, through April 21, 2011, vocational rehabilitative services, maintenance, conservative medical benefits, and reasonable and necessary medical services. The claimant filed a petition for review before the Illinois Workers' Compensation Commission (Commission).

¶ 10    On November 25, 2015, the Commission modified the arbitrator's calculated AWW to $1616.24 per week. The Commission otherwise affirmed and adopted the arbitrator's decision. Specifically, the Commission ordered Marion High School to pay the claimant $1077.49 per week for 21-6/7 weeks for TTD benefits for periods from August 6, 2010, through January 2, 2011, and April 19, 2011, through April 21, 2011. The Commission also ordered Marion High School to provide the claimant with vocational rehabilitation services with Liala Slaise of Triune Health Group and remanded the cause to the arbitrator for further determination on TTD compensation, medical benefits and compensation for permanent disability, if any, pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980). Following the Commission's decision ordering Marion High School to provide vocational rehabilitative services, the claimant met with

3

Slaise. Slaise testified that the claimant had the ability to work full-time at SIU, earning between $35,000 and $40,000 annually, within the Department of Kinesiology.

¶ 11    On February 6, 2017, following an arbitration hearing on November 15, 2016, regarding issues of wage calculations, wage differential, total permanent disability (TPD) and penalties and fees, the arbitrator, on remand from the Commission, awarded the claimant a section 8(d)(1) wage differential in the amount of $507.53, commencing on August 17, 2015, for the duration of her disability (820 ILCS 305/8(d)(1) (West 2012)). The arbitrator used a 52-week work year denominator, not 37 weeks, to calculate the upper wage bracket at $1315.15 per week ($68,388/52). Additionally, in relying on the opinions of Dr. Gornet and Slaise, the arbitrator concluded that the claimant, if she could work full-time (12 semester hours) at SIU, would earn $28,800 for two semesters, or $553.85 per week over a 52-week work year. Thus, the arbitrator determined the claimant was entitled to "2/3rds of $761.30 ($1,315.15 [upper wage] - $553.85 [lower wage]), or $507.53/week, for the duration of the disability, because the injuries sustained caused a loss of earnings ***." The claimant sought modification of the arbitrator's wage differential award with the Commission.

¶ 12    On November 30, 2017, the Commission modified the arbitrator's upper and lower wage bracket determinations. The Commission awarded the claimant wage differential of $649.77 ($947.66 x 2/3) per week, commencing on August 17, 2015, for the duration of the claimant's disability under section 8(d)(1) of the Act. 820 ILCS 305/8(d)(1) (West 2012). In reaching its determination, the Commission asserted that, had the claimant not sustained a work-related low back injury while working for Marion High School, her annual earnings would be $68,388 based on a 37-week work year. Specifically, the Commission modified the denominator to reflect 37 weeks, and determined that the claimant had personally chosen to work 75% of the semester

4

hours at SIU, thus, earning $21,600 based on a 32-week work year. Moreover, the Commission stated that "[a]ssuming Petitioner worked 75% of a full teaching workload in her prior employment, as she does in her personal employment, her salary would be $51,291.00."

¶ 13    Furthermore, the Commission, in comparing "apples to apples," awarded the claimant a wage differential of $649.77 ($947.66 x 2/3) per week, commencing on August 17, 2015, for the duration of the claimant's disability under section 8(d)(1) of the Act. 820 ILCS 305/8(d)(1) (West 2012). This determination was based on the claimant's current 32-week work year with SIU and her prior 37-week work year with Marion High School. The Commission reached this figure by finding an annual difference of $26,316 ($51,291 (Marion High School) - $24,975 (SIU) ($21,600 x 37/32)), which computed to a weekly difference of $974.66. The claimant and Marion High School both sought judicial review of the Commission's decision before the circuit court of Williamson County.

¶ 14    On June 12, 2018, the circuit court, after consolidating the parties' appeals, affirmed in part, reversed in part, and remanded with directions to the Commission. The court affirmed the Commission's decision to deny TPD benefits. In reversing and remanding with directions, the court found the Commission had "failed to calculate the wage differential based on 'the average amount she would be able to earn in the full performance of her duties' or the *** average amount she 'is earning,' " as set forth in section 8(d)(1) of the Act. 820 ILCS 305/8(d)(1) (West 2012). In particular, the court determined that the "Commission erred in utilizing annualized earnings rather than employing the average weekly wage to determine the weekly wage differential amount."

¶ 15    Moreover, the circuit court determined that the Commission erred by using a 37-week work year for SIU rather than a 32-week work year. Lastly, because the evidence demonstrated

the claimant was continuing to receive medical treatment, and there was no evidence in the record to support the Commission's finding that the claimant had personally chosen to work 75% at SIU or that a full-time position was available, the court determined that the Commission erred by reducing the average amount the claimant would have earned in the full performance of her duties by 25%.

¶ 16 The circuit court remanded with directions for the Commission to compute the section 8(d)(1) wage differential amount "by calculating 66 2/3 of the difference in the average amount [the claimant] would be able to earn in [the] full performance of her duties, [which would include] the stipulated $68,388 over the period of 37 weeks ($68,388/37 weeks), and the average amount [the claimant] was earning at SIU over the period of 32 weeks ($21,600.00/32 weeks)."

¶ 17 On January 28, 2019, the Commission entered an order on remand awarding the claimant a wage differential of $782.21 per week for the duration of her disability, commencing on August 17, 2015, pursuant to section 8(d)(1) of the Act. 820 ILCS 305/8(d)(1) (West 2012). Specifically, in calculating the claimant's wage differential, the Commission determined the upper wage bracket at $68,388 over 37 weeks, and the lower wage bracket at $21,600 over 32 weeks (66 2/3% x ($68,388/37 - $21,600/32) = $782.10). Marion High School sought judicial review of the Commission's decision in the circuit court of Williamson County.

¶ 18 On March 19, 2019, the circuit court confirmed the Commission's January 28, 2019, order on remand. Marion High School filed a timely notice of appeal.

¶ 19                                     II. Analysis

¶ 20 There is no dispute the claimant is entitled to wage differential benefits. The parties disagree, however, on how to calculate the claimant's earnings in the full performance of her duties but for her injuries. Specifically, Marion High School argues that the Commission erred as

a matter of law in calculating the upper and lower wage bracket figures. Marion High School, citing to *Greaney v. Industrial Comm'n*, 358 Ill. App. 3d 1002 (2005), asserts that "the upper wage bracket figure is not predicated upon average weekly wage," but focuses on the " 'full performance' " of the worker at time of the hearing. As such, Marion High School contends that the Commission is required to calculate the average amount the worker would be able to earn in the " 'full performance' " of the prior occupation, and this amount does not reflect AWW under section 10 of the Act (820 ILCS 305/10 (West 2004)). Therefore, Marion High School requests this court to annualize the upper and lower wage denominators when calculating the wage differential.

¶ 21    In response, the claimant asserts that the "use of AWW, rather than annualized average earnings, in computing a wage differential is firmly established by the Act and the Courts' interpretation of 8(d)(1)." Specifically, the claimant asserts that there is "no precedent for determining a wage differential based on a computation of a claimant's average 'annual' wage." We disagree with the claimant.

¶ 22    First, we find the issue raised in this case requires this court to interpret the language of the Act. To that extent, we employ a *de novo* standard of review. *Crittenden v. Illinois Workers' Compensation Comm'n*, 2017 IL App (1st) 160002WC, ¶ 18 (citing *Cassens Transport Co. v. Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006)). Once we have set forth the proper interpretation of the Act, the issue of whether the Commission properly calculated the wage differential award is subject to a manifest-weight-of-the-evidence standard of review. *Id.* (citing *Copperweld Tubing Products Co. v. Illinois Workers' Compensation Comm'n*, 402 Ill. App. 3d 630, 635 (2010)).

¶ 23    In order to qualify for a wage differential award under section 8(d)(1), a claimant must prove: (1) a partial incapacity which prevents him from pursuing his "usual and customary line of employment," and (2) an impairment of his earnings. 820 ILCS 305/8(d)(1) (West 2012); *Greaney*, 358 Ill. App. 3d at 1014 (citing *Yellow Freight Systems v. Industrial Comm'n*, 351 Ill. App. 3d 789, 794 (2004)). A qualifying claimant is entitled to receive compensation for the duration of her disability equal to 66-2/3% of the difference between "the average amount which [s]he would be able to earn in the full performance of [her] duties in the occupation in which [s]he was engaged at the time of [her] accident and the average amount which [s]he is earning or is able to earn in some suitable employment or business after the accident." 820 ILCS 305/8(d)(1) (West 2012).

¶ 24    Once the claimant provides evidence of these amounts, it is the Commission's function to use the formula provided in section 8(d)(1) of the Act to calculate the amount of the wage differential award. *Id.* The calculation of a claimant's wage differential award should be based on the amount a claimant would have been able to earn at the time of the arbitration hearing if she were able to fully perform the duties of the occupation in which she was engaged at the time of her injury. *Greaney*, 358 Ill. App. 3d at 1021 (citing *Old Ben Coal Co. v. Industrial Comm'n*, 198 Ill. App. 3d 485, 493 (1990)).

¶ 25    Here, the Commission entered an order on November 30, 2017, modifying the arbitrator's upper and lower wage bracket determinations. Specifically, the Commission determined that the claimant had personally chosen to work only 75% of a full teaching load, thus, it reduced the average amount the claimant would have earned in the full performance of her duties by 25%. The parties stipulated that the claimant earned $68,388 over 185 days, or 37 weeks, while employed by Marion High School. Marion High School requests this court to enter

8

an order annualizing the upper and lower wage brackets with a 52-week work year denominator to accurately demonstrate the claimant's full performance of her duties. The claimant asserts, however, that this court, in computing wage differential, should consider the AWW under section 10 of the Act (820 ILCS 305/10 (West 2004)). The claimant contends that "the *average amount* which [s]he is earning or is able to earn in some suitable employment or business after the accident" computes to the claimant's AWW, which is determined by the 37-week work year denominator at Marion High School and 32-week work year denominator at SIU. (Emphasis added.) See 820 ILCS 305/8(d)(1) (West 2012). We disagree with the claimant.

¶ 26   The calculation of a wage differential award is governed by section 8(d)(1) of the Act, which provides:

> "If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing h[er] usual and customary line of employment, [s]he shall *** receive compensation for the duration of h[er] disability, *** equal to 66-2/3% of the difference between the average amount which [s]he would be able to earn in the full performance of h[er] duties in the occupation in which [s]he was engaged at the time of the accident and the average amount which [s]he is earning or is able to earn in some suitable employment or business after the accident." *Id.*

¶ 27   Regarding the interpretation of the Act, the Illinois Supreme Court has provided as follows:

> " 'In interpreting the Act, our primary goal is to ascertain and give effect to the intent of the legislature. [Citation.] We determine this intent by reading the statute as a whole and considering all the relevant parts. [Citations.] We must construe the statute so that each word, clause, and sentence is given a reasonable meaning and not rendered superfluous, avoiding an interpretation that would render any portion of the statute meaningless and void. [Citation.] We interpret the Act liberally to effectuate its main purpose: providing financial protection for injured workers. [Citation.]' " *Crittenden*, 2017 IL App (1st) 160002WC, ¶ 22 (quoting *Cassens Transport Co.*, 218 Ill. 2d at 524).

¶ 28   As stated above, section 8(d)(1) of the Act does not include the phrase "average weekly wage." " 'Under our well-settled rules of statutory construction, "where the legislature includes particular language in one section of a statute but omits it in another section of the same statute,

9

courts will presume that the legislature acted intentionally in the exclusion or inclusion" [citation] and that the legislature intended different results [citation].' " *People v. Wunderlich*, 2019 IL App (3d) 180360, ¶ 18 (quoting *People v. Hunter*, 2017 IL 121306, ¶ 48, and *People v. Smith*, 2016 IL 119659, ¶ 30).

¶ 29    Here, we must presume that, had the legislature intended for section 8(d)(1) calculations to include AWW, it would have explicitly included such language, especially given that AWW is referenced multiple times in other sections of the statute. See 820 ILCS 305/8(b)(1), (b)(2), (b)(2.1), (b)(4), (b)(4.1), (b)(5), (b)(6), (g) (West 2012). To follow the claimant's position, that is to apply 37-week and 32-week denominators in calculating the wage differential award, would, first, result in a windfall to the claimant and, second, run contrary to the Act's purpose to make injured workers whole following an accident. Instead, the Act's language under section 8(d)(1) requires wage differential awards to be paid out in weekly installments using a 52-week denominator.

¶ 30    Next, we note that the parties properly stipulated that the claimant had earned an annual salary of $68,388 over 185 days at Marion High School, which represented the amount she would be able to earn in the full performance of her duties at the time of the arbitration hearing. As such, the upper wage bracket includes the stipulated $68,388 figure. Moreover, the circuit court determined that the Commission erred by reducing the claimant's earning capacity by 25% in calculating the lower wage bracket at $21,600. The Commission, however, failed to make a factual finding whether the claimant's earning capacity was limited to 9 semester hours, equaling $21,600, or 12 hours, at SIU. As such, Marion High School acknowledges on appeal that this missing finding of fact is necessary to properly calculate the lower wage bracket, and, thus, determine the claimant's wage differential award.

10

¶ 31    Accordingly, we conclude the Commission erred in computing both the upper and lower wage bracket figures where section 8(d)(1) of the Act requires wage differential awards to be paid out in weekly installments using a 52-week denominator. Moreover, the Commission erred as a matter of law in determining the figure for the lower wage bracket where it failed to make a factual finding as to the claimant's earning capacity at SIU.

¶ 32                                III. Conclusion

¶ 33    Accordingly, we affirm, in part, the Commission's decision to use the stipulated figure of $68,388 for the upper wage bracket, and reverse, in part, for the Commission to make a factual finding as to the average amount which the claimant was earning or was able to earn at SIU after the accident. Moreover, we order the Commission on remand to utilize a 52-week work year denominator to calculate the weekly installment amount for the claimant's wage differential award.

¶ 34    Affirmed in part; reversed in part; cause remanded with directions.